## STATE BOARD OF EQUALIZATION OF WYOMING v. STANOLIND OIL & GAS COMPANY, ET AL.

(No. 1990; March 2, 1937; 65 Pac. (2d) 1095)

For the plaintiff and appellant, there was a brief by *Ray E. Lee,* Attorney General; *Thomas F. Shea,* Deputy Attorney General, and *William C. Snow,* Assistant Attorney General, all of Cheyenne, and oral argument by *Mr. Lee.*

For the defendants and respondents, The Stanolind Oil and Gas Company, Standard Oil Company of Indiana, White Eagle Oil Corporation and Continental Oil Company, there was a brief by *Hagens & Wehrli* of Casper and oral argument by *G. R. Hagens*.

For the defendants and respondents The Texas Compan, there was a brief by *Y. A. Land* of Denver, Colorado, and *A. D. Walton* of Cheyenne, Wyoming, and oral argument by *Mr. Land.*

For the defendant and respondent, Sinclair Wyoming Oil Company, there was a brief and oral argument by *C. R. Ellery* of Cheyenne.

KIMBALL, Justice.

The case under the Declaratory Judgments Act is companion to State Board of Equalization v. Oil Well Supply, No. 1989, decided this day. The question is whether the transportation of crude oil from the producing field to the refinery is a taxable service under the Emergency Sales Tax Act of 1935 (Ch. 74, Sess. Laws of 1935). The case was heard on the pleadings and agreed statements of facts. The judgment of the trial court declares that purchases of the services (transportation) in question were "wholesale sales" as defined by section 2(f) of the act, and therefore not taxable. The plaintiff board appeals.

All the transactions described in the agreed statements are not alike, but for the purposes of this opinion there is no need to distinguish one from another, as the material facts are common to all. In each transaction crude oil was transported through a pipe line from the producing oil field to the terminus of the line where it was delivered to a company engaged in the business of refining. The owner and operator of the pipe line was paid for the service of carrying the oil to the refiner, and the refiner used the oil in the production and manufacture of gasoline.

The Emergency Sales Tax Act, as stated in its title, imposes "a tax upon retail purchase of certain commodities, admissions and services." Transportation, telephone service and telegraph service are the only services made subject to the tax. Sec. 4. The tax on transportation is imposed by section 4 by these words: "There is hereby levied and there shall be collected and paid: * * * (b) A tax equivalent to two per cent. of the amount paid: (1) to carriers * * * for all transportation."

Section 2(b) declares that the term "sale" or "sales" includes, among other things, the sale of services. Sections 2(d) and 2(e) define "wholesale sale" and "retail sale"; but these definitions refer only to sales of tangi-

ble personal property. It is only in section 2(f) that we find a basis for distinguishing wholesale sales from retail sales in the case of services. This section declares:

"(f) Each purchase of tangible personal property or service made by a person engaged in the business of producing, furnishing, manufacturing, or compounding for sale, profit or use, any article, substance, service or commodity which is actually used in the production of, or enters into the processing of, or becomes an ingredient or component part of the article, substance, service, or commodity which he manufactures, or compounds, produces or furnishes, * * * shall be deemed a wholesale sale and shall be exempt from taxation under this act."

Omitting the parts that are not material in the consideration of contentions in the present case, the section reads:

"Each purchaser of * * * service * * * which is actually used in the production of, or enters into the processing of, or becomes an ingredient or component part of the * * * commodity which [the purchaser] manufactures or * * * produces, * * * shall be deemed a wholesale sale and shall be exempt from taxation under this act."

The argument that the definition does not apply unless the purchased service becomes a physical part of the commodity manufactured or produced by the purchaser is even less tenable here than in the companion case which involved sales of tangible property. We cannot imagine how any service taxable under the general provisions of section 4 of the act could ever become "an ingredient or component part" of a manufactured commodity. Section 2(f) of the bill (H. B. 124) for the act, when introduced, applied only to "each purchase of tangible personal property or product" which entered into and became an ingredient or component part of the commodity manufactured or compounded by the purchaser. The section was made to

apply to purchases of service by amendment which substituted the word "service" for the word "product." At the same time and by the same procedure, as more fully described in the companion case, the definition was further enlarged by making it apply to each purchase of property or service which is "actually used in the production of, or enters into the processing of" the commodity produced or manufactured by the purchaser. (See Senate Journal, 1935, pp. 432, 517, House Journal, p. 622.) There can be no doubt that these amendments show the intention to exempt purchases of transportation service which the legislature thought might either be "used in the production" or "enter into the processing" of a manufactured commodity. This is evidently on the theory that in an economic sense the exempted service is resold by the purchaser when he sells the commodity which he produces or manufactures. See State Board v. Oil Well Supply Co., supra.

To give effect to the legislative intention, we must hold that the purchases of the transportation services in question in this case are within the exemption of section 2(f). To hold otherwise would seem to nullify the section in so far as it applies to purchases of services. We have had no suggestion of any case in which such exemption could be granted if it should be denied in the present case. The transported crude oil was actually used in the production of gasoline and other products into which it was converted by the process of refining. Transportation from the field to the refinery was one of a series of acts necessary to make the oil marketable in its destined form. Sales of the oil were wholesale sales under the act, and no tax could be collected on the purchase price. The transportation charges may reasonably be considered a part of the purchase price of the oil at the refinery. See Franzen v. Southern Surety Co., 35 Wyo. 15, 31, 246 Pac. 30, 35. We think the view that the transportation of the crude

oil to the refineries was a service which was used in the production or entered into the processing of the refiners' products finds support in cases under mechanic's lien and contractor's bond statutes, holding in effect that transportation of materials is a service that enters into the construction of a building or highway. Franzen v. Southern Co., supra; Davis v. Mial, 86 N. J. L. 167, 90 Atl. 315, Ann. Cas. 1916E, 1028; Indemnity Ins. Co. v. Portsmouth etc. Co., 122 Oh. St. 439, 172 N. E. 152; Maryland Casualty Co. v. Ohio River Gravel Co., 20 F. (2d) 514.

The judgment of the district court is affirmed.

BLUME, Ch. J., and RINER, J., concur.