STATE v. CAPITAL COAL COMPANY ET AL.

(No. 2095; March 21, 1939; 88 Pac. (2d) 481)

For the defendants and appellants, there was a brief by *Richard J. Jackson, C. R. Ellery, John U. Loomis* and *E. T. Lazear,* all of Cheyenne, and oral argument by *Messrs. Jackson* and *Ellery.*

For the respondent there was a brief by *Ray E. Lee,* Attorney General; *Thomas F. Shea,* Deputy Attorney General; and Wm. C. Snow, Assistant Attorney General, and oral argument by *Mr. Lee.*

KIMBALL, Justice.

The appeal is from a judgment in favor of the State of Wyoming in an action by it to recover from defendants sales taxes under the Emergency Sales Tax Act of 1935 (Sess. Laws, 1935, ch. 74) on amounts paid by one defendant, Capital Coal Company, to the other defendant, Union Pacific Railroad Company, for intrastate transportation of coal from the mines to Cheyenne, Wyoming, during five months in 1936 and three months in 1937 before the act of 1935 was superseded by the Selective Sales Tax Act of 1937 (Sess. Laws, 1937, ch. 102).

The coal company refused to pay the tax to the railroad company, and both defendants now challenge the judgment, on the ground that the purchases of the transportation services should be deemed wholesale sales as defined by section 2(f) of the applicable act.

The coal company was engaged in the business of selling coal at wholesale and retail at Cheyenne. It bought the coal at the mines in carload lots f. o. b. cars at nearby shipping points which, as to coal produced in Wyoming, were Hanna, Rock Springs and Kemmerer. The coal was all graded and screened at the mines, was ready for resale by the coal company on its arrival at Cheyenne, and was all resold. About 90 per

cent of it was delivered directly from the cars by the coal company to its customers.

As explained in State Board of Equalization v. Stanolind Oil & Gas Co., 51 Wyo. 237, 65 P. (2d) 1095, the only services taxed by the Emergency Sales Tax Act of 1935 were transportation and telephone and telegraph services. By section 4(b) a tax of two per cent. was levied on amounts paid carriers for all intrastate transportation. In the bill for the act as introduced the only basis for distinguishing non-taxable wholesale sales from taxable retail sales in cases of services was a part of section 2(f) which provided:

"Each purchase of service as defined by Section 4(b) of this act, by a person engaged in compounding and selling a service of a like kind, which is subject to tax under Section 4(b) of this act and actually used in compounding such taxable service shall be deemed a wholesale sale and shall be exempt from taxation under this act."

This part of section 2(f) was not amended by the legislature and appears as copied above in the act as passed. The coal company in contending that this provision is applicable argues that the transportation of coal from the mines to Cheyenne was actually used by the coal company in compounding a like taxable service which the coal company was rendering in delivering coal to its customers by trucks after the coal had been transported to Cheyenne by rail. A short and sufficient answer to this is that the coal company in delivering coal to its customers by truck was not compounding and selling a service which was subject to tax under section 4(b).

Section 2(f) of the bill as introduced contained, also, this provision:

"Each purchase of tangible personal property or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use,

any article, substance or commodity which enters into and becomes an ingredient or component part of the tangible personal property or product which he manufactures or compounds or the container, label, or the shipping case thereof shall be deemed a wholesale sale and shall be exempt from taxation under this act."

This provision of the bill was materially changed by amendment. In the act as passed it reads, still as part of section 2(f), as follows (the added words being italicized):

"Each purchase of tangible personal property *or service,* made by a person engaged in the business of *producing, furnishing,* manufacturing, or compounding for sale, profit or use, any article, substance, *service* or commodity, which *is actually used in the production of, or enters into the processing of, or* becomes an ingredient or component part of the article, substance, *service,* or commodity which he manufactures or compounds, *produces, or furnishes,* or the container, label, or the shipping case thereof, shall be deemed a wholesale sale and shall be exempt from taxation under this act."

These amendments, as noted in our decisions in State Board of Equalization v. Oil Wells Supply Co., 51 Wyo. 226, 65 P. (2d) 1093, and State Board of Equalization v. Stanolind Oil & Gas Co., 51 Wyo. 237, 65 P. (2d) 1095, enlarged the class of sales deemed wholesale sales by making it include sales both of tangible property and services which, though actually used and consumed by the purchaser, became in an economic sense a part of a commodity that was resold. In the Stanolind Oil and Gas Company case we held that purchases of transportation of crude oil through a pipe line from the producing wells to refineries where the oil was manufactured into gasoline and other petroleum products were wholesale sales of services as defined by the section as amended and passed. The only

ground for distinguishing that case from the one at bar is that the oil was subjected to the refining process after its transportation and before it was resold, while in this case the coal was ready for resale as soon as it reached Cheyenne. But what we said in the former case as to the intention of the legislature, as shown by the amendments, is pertinent here. The purchased transportation in question in this case became a part of the coal resold to the coal company's customers in the same sense that the cost of transportation of the crude oil became a part of the products resold by the refiners in the former case.

The provision in question, as applied in this case, may be read as follows:

Each purchase of * * * service (transportation) made by a person engaged in the business of * * * furnishing * * * for sale, profit or use any * * * commodity (coal) which * * * enters into the processing of, or becomes an ingredient or component part of the * * * commodity which he * * * furnishes, * * * shall be deemed a wholesale sale and shall be exempt from taxation under this act.

We hold that this must be construed as a declaration that purchases of transportation like those here involved were wholesale sales. The coal company was "furnishing a commodity for sale, profit and use," and the transportation may be considered a part of the "process" of furnishing. It may be thought that, to bring the purchases within the letter of the statute, we must give some of its words a rather broad meaning, but we think we are justified in so doing. In Equitable etc. Society v. Thulemeyer, 49 Wyo. 63, 96, 52 P. (2d) 1223, 1234, we stated the general rule that revenue laws will, if ambiguous or doubtful, be construed in favor of the taxpayer. Statutes which impose restrictions on trade or common occupations, or which levy an excise tax upon them, are generally construed

strictly. Sewell v. Jones, 9 Pick. 412. The state, however, relies on the companion rule that an exemption from taxation is never presumed, but must be clearly conferred in plain terms. See Goshen Irrigation Dist. v. Hunt, 49 Wyo. 497, 514, 57 P. (2d) 793, 799.

Most of the early cases that formulated the last mentioned rule treated of exemptions which were mere gratuities and unjustifiable except upon the ground that they were intended to further some public purpose. See Gillette v. Hartford, 31 Conn. 351. The language creating the exemption was given a literal and strict construction, because it was presumed that the legislative intention to exempt from a general tax or a common burden would be expressed in clear terms. In Goshen Irrigation Dist. v. Hunt, supra, we held the rule applicable in the construction of a statute exempting a "legal subdivision of the state" from the payment of motor vehicle license fees, and said that the exemption necessarily was productive of "inequality in contributions to the common burden of highway construction and maintenance." In Cooley on Taxation (4th ed.) § 673 it is said that "the rule of strict construction of exemption statutes does not apply to special taxes relating to special cases and affecting only special classes of persons." See, also, Matter of Enston, 113 N. Y. 174, 177-178, 21 N. E. 87, 3 L. R. A. 464; Eidman v. Martinez, 184 U. S. 578, 583. The Emergency Sales Tax Act of 1935 imposed an excise on transactions not theretofore selected and defined for the purpose of taxation. The legislature intended to impose the tax on retail sales only and made the act apply to a limited class of "purchases" at retail of services including transportation by intrastate carriers. To make a distinction between wholesale sales and retail sales of services was not an easy task. The legislature undertook to make the distinction by defining wholesale sales which it refused to burden with the tax. It would seem

reasonable to consider section 2(f) not as an exemption statute to be strictly construed, but as a necessary part of the definition of the transactions covered by the act. See Doby v. State Tax Comm., 234 Ala. 150, 153, 174 So. 233.

There are other reasons that seem to justify our construction of the statute. The transactions here in question, though perhaps not clearly within the letter of the statutory definition of a wholesale sale, are not on principle distinguishable from transactions not taxable under our holding in State Board of Equalization v. Oil Wells Supply Co. and State Board of Equalization v. Stanolind Oil & Gas Co., supra. Legislative policy may carry a statute beyond the strict letter. See Johnson v. United States, 163 F. 30, 89 C. C. A., 508, 18 L. R. A. (N. S.) 1194; Van Beeck v. Sabine Towing Co., 300 U. S. 342, 351; Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 45, 92 So. 193, 37 A. L. R. 898, 906. The legislature evidently intended to prevent a piling up of sales taxes which, though it would not result in what is commonly called "double taxation," might be thought objectionable on similar grounds. Except for our holding here and in previous cases the Wyoming buyer at retail of an article manufactured in Wyoming from materials produced in Wyoming, and sold at wholesale and retail in Wyoming, might be required to pay four or more taxes on transportation, and possibly a profit on the tax. Wyoming mines and factories would be put at a disadvantage by a tax on the intrastate transportation of their products that must be sold in competition with similar products bought in other states and delivered by interstate transportation free from the tax. If the statute had authorized the tax sought to be recovered in this case, the coal company could have evaded it by purchasing its coal from mines in some other state. And it would have been evaded by those coal dealers who were so

situated as to be able to haul the coal from the mines in their own trucks. We should not infer that the legislature intended to impose a tax that would discriminate against goods produced or manufactured in Wyoming, or against those merchants who patronize intrastate carriers.

The judgment will be reversed.

RINER, Ch. J., and BLUME, J., concur.