## STATE v. HOLLY SUGAR CORPORATION ET AL.

(No. 2185; September 19, 1941; 116 Pac (2d) 847)

274

For the appellant there was a brief by *Ewing T. Kerr,* Attorney General; *Harold I. Bacheller,* Deputy Attorney General; and *Arthur Kline,* Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by *Arthur Kline.*

For the respondents, there was a brief by *John C. Pickett* and *John U. Loomis* of Cheyenne and *Erle H. Reid* of Torrington, and oral arguments by *Messrs. Pickett* and *Reid*.

RINER, Chief Justice.

This action arose in connection with the administration by the State Board of Equalization of the Selective Sales Tax Act of 1937, (Laws of Wyoming, 1937, Chapter 102.) The defendants declined to pay certain

amounts claimed by said Board to be due the State of Wyoming under said Act, and this action was brought by the commonwealth to recover these amounts, together with accrued penalties, interest and costs. The plaintiff below, appellant here, will usually be referred to hereinafter as "the State" or the "plaintiff". The two respondents, defendants below, Holly Sugar Corporation and The Union Pacific Railroad Company, will be subsequently mentioned, the former as the "Sugar Company" and the latter as the "Railroad Company". The action was prosecuted unsuccessfully in the district court of Laramie County, and the Attorney General of the State of Wyoming and his assistants have brought the case here for review by direct appeal.

The facts material to be considered may be outlined as follows: The action aforesaid was instituted to recover claimed taxes in certain amounts listed in plaintiff's petition, upon the transportation of sugar beets, limerock and beet pulp carried by the Railroad Company for the Sugar Company, the transportation charges being paid by the latter to the former. These taxes are asserted to be due under Section 4 (b) of said Act, which, laying aside the language non-pertinent at present, reads:

"From and after the effective date of this Act, within the limitation herein set out, there is hereby levied and there shall be collected and paid:
"(b) An excise tax equivalent to two per cent. (2%) * * * * of the amount paid: (1) to carriers, * * * * for all transportation, * * * *."

The two respondents assert that the amounts paid the Railroad Company for transportation must be regarded as wholesale sales and so exempt from taxation under certain provisions of the first and third paragraphs of Section 2 (f) of said Act, which respectively contain the following language:

"(f) Each purchase of tangible personal property

or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity which directly enters into and becomes an ingredient or component part of the tangible personal property or product which he manufactures or compounds, or the furnished container, label, or the shipping case thereof, shall be deemed a wholesale sale and shall be exempt from taxation under this Act. * * * *

"For the purpose of this Act, all purchases of livestock, feeds for use in feeding livestock or poultry for marketing purposes, * * * * are deemed to be wholesale sales, exempt from taxation under this Act."

Section 2 (1) of the Act aforesaid contains also this definition:

"(1) The term 'tangible personal property' means personal property which may be seen, weighed, measured, felt, touched, or is in any other manner perceptible to the senses."

The cause was tried upon stipulated facts, and essentially these were: Between April, 1937, and September, 1939, inclusive, the Railroad Company transported and delivered to the Sugar Company certain shipments of sugar beets and limerock, for which the latter paid to the former, as above described, stated sums of money; that during that period beet pulp, a by-product created by the manufacture of sugar from sugar beets and used only for livestock feed, to employ the precise language of the agreed facts, "was loaded in railroad cars at the pulp press at the factory of the defendant Holly Sugar Corporation, near Torrington, Wyoming, and shipped to farmers and livestock feeders within the State of Wyoming; that the sugar beet pulp is sold at a fixed price and the cost of the transportation of the same is added to the price of the beet pulp and paid by the defendant, Holly Sugar Corporation, when shipped and later collected from the purchaser of said beet pulp; that said transportation charges are paid

by the defendant, Holly Sugar Corporation, for the convenience of the purchasers of said pulp; that all of the beet pulp hereinabove described was shipped to purchasers thereof and was used in feeding livestock for marketing purposes only; that the transportation of the said pulp was one of a series of acts necessary for the use of the same as livestock feed and the amounts paid for such transportation were actually a part of the cost of such pulp at the place where it was to be used as such livestock feed, and became a part of the actual cost of said livestock when marketed." The amount thus paid by the Sugar Company to the Railroad Company for this transportation of the pulp was a stated sum of money. Two per centum upon these stated sums respectively was calculated and set forth, as were the amounts claimed by the State as penalties and interest.

It also appears from the stipulated facts that the Sugar Company is regularly engaged in the business of manufacturing sugar for sale, profit and use; that the limerock and sugar beets aforesaid were purchased by the Sugar Company and transported to its factory located near Torrington, Wyoming, for this manufacturing purpose, and that said limerock and sugar beets directly entered into and actually became an ingredient and component part of the refined sugar produced by the Sugar Company at its factory; that the transportation of these beets and limerock was one of the acts necessary to be performed to make sugar into marketable form and the amounts paid for such transportation "became a part of the actual cost of the sugar in its marketable form".

The district court of Laramie County found generally for the Sugar Company and the Railroad Company and against the plaintiff, with other findings based upon the stipulated facts outlined above, and entered judgment for said defendants and respondents, and it

is this judgment which is now drawn in question by this appeal.

At this point it may be noted that the controversy now before us is the outgrowth of legislative statutory alterations of a law which was first considered by the State Legislature of Wyoming during its 1935 session. The disposition of the case at bar may properly be based upon a reasonable interpretation of those changes. Briefly the history of what was done may be stated as follows:

In the year last mentioned the State Legislature for the first time enacted what was known and usually cited as the "Emergency Sales Tax Act of 1935". (Laws of Wyoming 1935, Chapter 74.) That Act, in Section 2 (f) thereof read:

"(f) Each purchase of tangible personal property or service made by a person engaged in the business of producing, furnishing, manufacturing, or compounding for sale, profit or use, any article, substance, service or commodity which is actually used in the production of, or enters into the processing of, or becomes an ingredient or component part of the article, substance, service, or commodity which he manufactures or compounds, produces or furnishes, or the container, label, or the shipping case thereof, shall be deemed a wholesale sale and shall be exempt from taxation under this act."

Its Section 4 (b) so far as material to be considered now read:

"Section 4. From and after the effective date of this Act, within the limitation herein set out, there is hereby levied and there shall be collected and paid:
* * * *
"(b) A tax equivalent to two per cent (2%) of the amount paid: (1) to carriers, * * * * for all transportation, * * * *."

These sections as they affect the taxation of transportation were examined in our cases No. 1990, State

Board of Equalization of Wyoming v. Stanolind Oil & Gas Co., et al., 51 Wyo. 237, 65 P. (2d) 1095, opinion filed March 2, 1937, and No. 2095, State v. Capital Coal Co., et al., 54 Wyo. 176, 88 P. (2d) 481, opinion filed March 21, 1939.

In the case first mentioned it was held that the purchase of transportation service of crude oil through a pipe line from a producing oil field to a point where it was delivered to a company engaged in the business of refinding crude oil was an exempt wholesale sale so far as the sales tax under the Act was concerned, and that this was so because such transportation was a service used in production or entered into the process of manufacturing the refinery's product.

In the last case above cited it appeared that the Coal Company was engaged in the business of selling coal at wholesale and retail at Cheyenne, Wyoming. It purchased the coal at the mines in carload lots at Hanna, Rock Springs and Kemmerer, Wyoming, this coal being ready for resale by the Coal Company on its arrival at Cheyenne, and was all resold, approximately ninety per cent of it being delivered directly from the cars by the Coal Company to its customers. The holding upon this set of facts was that:

"The purchased transportation in question in this case became a part of the coal resold to the coal company's customers in the same sense that the cost of transportation of the crude oil became a part of the products resold by the refiners in the former case."
The statute aforesaid was applied in this wise:

"Each purchase of * * * service (transportation) made by a person engaged in the business of * * * furnishing * * * for sale, profit or use any * * * commodity (coal) which * * * enters into the processing of, or becomes an ingredient or component part of the * * * commodity which he * * * furnishes, * * * shall be deemed a wholesale sale and shall be exempt from taxation under this act.

"We hold that this must be construed as a declara-

tion that purchases of transportation like those here involved were wholesale sales."

It was also pointed out that:

"Except for our holding here and in previous cases the Wyoming buyer at retail of an article manufactured in Wyoming from materials produced in Wyoming, and sold at wholesale and retail in Wyoming, might be required to pay four or more taxes on transportation, and possibly a profit on the tax. Wyoming mines and factories would be put at a disadvantage by a tax on the intrastate transportation of their products that must be sold in competition with similar products bought in other states and delivered by interstate transportation free from the tax."

The Emergency Sales Tax Act of 1935 by its own terms declared that it should be "self-repealing and shall expire on March 31, 1937".

It is a truism that taxing statutes once enacted are rarely entirely discontinued due to the rising cost of government and other reasons not so apparent. Consequently the Legislature passed the "Selective Sales Tax Act of 1937" to take effect April 1, 1937. This law contained the provisions as set forth above, the significant fact being that in the 1937 law while for the most part carrying forward the language of the Emergency Sales Tax Act of 1935 in Section 2 (f), quoted above, nevertheless deliberately deleted the word "service" and substituted in lieu thereof the word "product". The latter law also deleted some of the phraseology of the earlier Act reading, "person engaged in the business of *producing, furnishing,* manufacturing, or compounding for sale, profit or use", by removing the words we have above italicized in that phraseology; the Legislature continued its alterations of this paragraph (2 (f)) of the 1935 law by changing the following language therein, "any article, substance, service or commodity which is actually used in the

production of, or enters into the processing of, or becomes an ingredient or component part of the article, substance, service, or commodity which he manufactures or compounds, produces or furnishes", so as to read, "any article, substance or commodity which directly enters into and becomes an ingredient or component part of the tangible personal property or product which he manufactures or compounds". In line with these changes and to make clearer, if possible, its purpose to change the intent of the 1935 law, the Legislature finally added to Section 2 aforesaid another sub-section ("l"), which has been set forth above verbatim.

At the risk of some repetition we have emphasized and placed in juxtaposition the wording of the two statutes as above set forth in an effort to demonstrate as vividly as possible the important changes made in the earlier law when the latter one was put into operation.

Having in mind that the Legislature had before it the fact that the district court of Laramie County in the Stanolind Oil & Gas Company case, supra, had construed the word "service" in the 1935 Act to include "transportation", had entered its judgment accordingly, and that that case was even then before this court attended with the presumption that this judgment was correct, as shortly thereafter we held, was as a matter of fact true, we must conclude the Legislature made the changes above indicated deliberately and with studied intent to change the meaning of the earlier law so far as concerns the future administration thereof, as interpreted by the trial court in that case. We are unable to perceive how any other reasonable result could be reached, when the changes we have pointed out are fully and thoroughly considered.

Thereafter the case of State v. Capital Coal Company, supra, arose, and was brought to this court, and,

as we have seen, the consequences flowing from a law or a court decision contrary to the 1935 law, as construed by both the district court of Laramie County in the particular above mentioned and this court, were more elaborately stated. As has been mentioned the opinion in that case was filed March 21, 1939. What happened? The last Legislature of the State of Wyoming changed Section "(b)" of the 1937 law so that it now reads (Laws of Wyoming, 1941, Chapter 98), so far as pertinent to the present discussion:

"There is hereby levied and there shall be collected and paid:
* * * *
"An excise tax equivalent to two per cent. (2%), * * * of the amount paid: (1) to carriers, * * * for all intrastate transportation of persons, * * *."

In Edwards v. Lewis and Clark County, 53 Mont. 359, 165 P. 297, it was held that where after a statute has been construed, the lawmaking body makes radical changes in phraseology, an intention is thereby shown to establish a rule different from the one announced by such construction. See also 59 C. J. 1096, Section 645. And the text last cited (59 C. J. 1097-1098) declares that:

"So a change of phraseology from that of the original act will raise the presumption that a change of meaning was also intended, as where material words contained in the original act are omitted from the amendatory act."

Many additional authorities announcing the same rule could readily be supplied.

We are obliged to reach the conclusion that the Legislature by the quite obvious and sweeping alterations adopted in the 1937 Selective Sales Tax Act, as hereinbefore described, when viewed in the light of the provisions of the Emergency Sales Tax Act of 1935, as judicially considered, intended to tax the service of

transportation of freight. Transportation is not "tangible personal property" as defined in Sections 2 (1) in the 1937 Selective Sales Tax Act aforesaid, or the exemption section 2 (f); neither is transportation in any reasonable construction of the word a "product" as that term is used in the exemption section 2 (f) aforesaid. But it certainly is a "service", as this court has heretofore held, in construing the 1935 Emergency Sales Tax Act.

It is not the province of this court to rewrite legislation even though it may believe the legislature has adopted a law whose burdens will be onerous and whose policy is unwise. Courts may only point out the consequences of such a statute in the hope that the lawmaking body will revise the questionable statute. That this was done in the case at bar we have already seen. To assert and maintain that courts and legislatures are never mistaken or never reach wrong conclusions would be contrary to the facts as every one knows.

It is urged that the 1937 Act was not an amendment of the 1935 Act because the 1935 Act expired by its own limitation on March 31, 1937. Technically speaking that is perhaps so, but when the general effect of both Acts is examined, viz., to impose a tax "upon every retail sale of tangible personal property" equivalent to a certain percentage of the purchase price paid, and it also in fact appears that the 1937 Act, which took effect the next day, i. e., on April 1, 1937, was to relieve the taxation burden on property generally, and the 1935 Sales Tax Act was for the same purpose (see Section 19 (d) Chapter 74, Laws of Wyoming, 1935, and Section 19 (e) Chapter 102, Laws of Wyoming, 1937), the 1937 Act must be regarded in many respects as amendatory of the earlier law.

In this connection it may not be amiss to bear in

mind also the title of the Selective Sales Tax Act of 1937, whose language is:

"An Act imposing an excise tax upon retail sales of certain commodities, admissions and services, and providing for the ascertainment, collection and distribution thereof; providing for the administration and enforcement of this Act; providing penalties; providing for certain exemptions; providing for the payment of certain tax by vendor; continuing in full force and effect all the provisions of Chapter 74, Session Laws of Wyoming, 1935, for the purpose of assessment and collection of taxes, penalties, claims or actions due or pending under said Chapter; excepting this Act from the provisions of Sections 92-101, 92-127, 92-128, 92-129, Wyoming Revised Statutes, 1931; and making appropriations."

Says 59 C. J. 851:

"Whether an act is an amendment of a prior act is to be determined by a comparison of their provisions, and its character is not determined by the fact that it does or does not profess to be an amendment. The form which the latter act may take is not material, and although it purports to be complete in itself, if it intermingles different provisions with the old ones or adds new provisions creating a new law from the prior act, then the new one is amendatory."

And in State v. Chadbourne, 74 Maine 506, 508, the court said:

"If a subsequent statute does in fact modify and change the proceedings to be had under a former act, the later act is an amendment of the earlier act, and must be so regarded and treated, although it is not so called in the act itself."

In City of Metropolis v. Gibbons, 334 Ill. 431, 166 N. E. 115, the court uses this language:

"The amendment of an act always operates as a repeal of its provisions to the extent that they are changed by, and rendered repugnant to, the amendatory act, and the express repeal of a section of an ordi-

nance or statute and the substitution of other provisions in place of the repealed section amount to an amendment of the section."

Whether an act is repealed by an amendatory statute or whether it expires by its own limitation would seem to make very little difference.

Our attention is directed to the point that it is stipulated that the cost of transportation of sugar beets, limerock and beet pulp entered into and became a part of the final purchase price of these articles and that such purchase price of these articles is exempt as a wholesale sale under the terms of the 1937 Selective Sales Tax Act. We are unable to perceive that because the cost of transportation of these various articles ultimately became a part of the cost price to the consumer changes the result we must necessarily reach in this case, as already announced. It must not be overlooked that so far as the Sugar Company was concerned the purchase price of limerock, beets and pulp was one thing, while their transportation was another, as the 1937 Legislature evidently viewed the matter. Consequently we are impelled to conclude that the Legislature by the changes evidently intentionally made in the later Sales Tax Act of 1937 was bent on taxing transportation, even though it was reflected in the ultimate cost of the completed article of sugar and beet pulp and even though this amounted in effect to double taxation. This it could do if it so chose. General Tire Co., Inc. v. Oklahoma Tax Commission, (Okla.), 112 P. (2d) 407, and cases cited. The lawmaking body seems to have made it very plain that while the Legislature desired to exempt the purchase by the manufacturer of his raw materials, it was nevertheless desirous of imposing a tax upon the transportation of such raw materials. Section 4 (b) of the 1937 Selective Sales Tax Act undertakes to tax all transportation whether of persons or of freight. There seems to be no excep-

tion. The 1941 amendatory act quoted above struck down the freight tax. As we have observed the 1935 Emergency Sales Tax Act declared exempt the service of transportation where it was "actually used in the production of" a manufactured article. The result of the 1941 Act and the 1935 Act as construed by this Court would appear to be the same.

We have no hesitation in saying that we are not at all in sympathy with the 1937 Act as it must be applied in the case at bar, but that can have no weight in the construction of the law. The intention of the Legislature as gleaned from a reasonable interpretation of the language used in the several statutes which the facts of the case at bar called before us and the history of this kind of legislation in this state must of course control.

The brief on behalf of the Sugar Company suggests that it should not be held responsible for interest and penalties in the event we should hold the tax sued for collectable. It is said that the Sugar Company acted in good faith in questioning by court proceedings the tax involved. We have no doubt that this is so, but the statute makes no exception that we can find along the line thus suggested. No authorities are cited. We cannot under such circumstances make an exception where the statute makes none.

The judgment of the district court of Laramie County must be reversed for proceedings not in conflict with the views herein expressed.

*Reversed.*

KIMBALL and BLUME, JJ., concur.