2017 WY 106

**PACIFICORP, INC., Appellant (Petitioner),**

v.

**DEPARTMENT OF REVENUE, STATE of Wyoming, Appellee (Respondent).**

S-16-0084

Supreme Court of Wyoming.

September 14, 2017

Representing Appellant: Paul J. Hickey, Hickey & Evans, LLP, Cheyenne, Wyoming; Richard G. Smith, Hawley, Troxell, Ennis & Hawley, LLP, Boise, Idaho. Argument by Mr. Smith.

Representing Appellee: Peter K. Michael, Attorney General; Karl D. Anderson, Senior Assistant Attorney General; Ryan T. Schelhaas, Senior Assistant Attorney General;

Lisa M. Spillman, Senior Assistant Attorney General. Argument by Ms. Spillman.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

BURKE, Chief Justice.

[¶1] PacifiCorp, Inc. operates coal-fired electrical generation facilities in Wyoming. In 2012, PacifiCorp sought a ruling from the Wyoming Department of Revenue that its purchases of certain chemicals used in the process of generating electricity qualified for either the manufacturers' sales tax exemption or the wholesalers' sales tax exemption. The Department ruled against PacifiCorp, and the Board of Equalization affirmed the Department's ruling. PacifiCorp appealed to the district court, and we accepted certification of the appeal from the district court. We affirm the Board of Equalization's decision.

### ISSUES

[¶2] PacifiCorp presents three issues for our review:

1. Whether the Board committed legal error, or made a decision not supported by substantial evidence, when it determined that PacifiCorp did not engage in "manufacturing" or "processing" as required to qualify for a sales tax exemption under Wyo. Stat. Ann. § 39-15-105(a)(iii)(A).

2. Whether the Board committed legal error, or made a decision not supported by substantial evidence, when it held that certain chemicals necessary to treat water and sulfur dioxide emissions during the coal combustion processes that generate electricity are not "used directly" to generate electricity, and are therefore not exempt from sales tax under Wyo. Stat. Ann. § 39-15-105(a)(iii)(A).

3. Whether the Board committed legal error, or made a decision not supported by substantial evidence, when it held that PacifiCorp's purchases of certain chemicals and catalysts do not constitute wholesale purchases exempt from taxa-

tion under Wyo. Stat. Ann. § 39-15-105(a)(iii)(F).

### FACTS

[¶3] PacifiCorp operates four coal-fired electrical generation facilities in Wyoming: the Jim Bridger, Dave Johnston, Naughton, and Wyodak power plants. To generate electricity at these facilities, PacifiCorp first feeds coal into a pulverizer where it is ground to a powder. The coal powder is then blown into a boiler where it is ignited. The walls of the boiler are lined with tubes filled with water. The burning coal heats the water inside the tubes and converts it to steam. The steam's pressure is directed into a turbine, causing the rotors in the turbine to rotate. The turbine is connected to a generator, a large two-pole magnet that rotates inside a coil of wires, which generates electric energy that is transmitted and sold to customers.

[¶4] There are two separate water cycles involved in the generation process: boiling and cooling. As mentioned above, the water inside the boiler tubes is converted to steam to turn the turbines and generate electricity. In the cooling cycle, water is used to condense the steam back into liquid water.[1] The water in the boiling cycle must be "ultrapure," meaning exceptionally free of dissolved minerals, and neither acidic nor alkaline, in order to prevent mineral build-up inside the boiler that would eventually cause failure. To create "ultrapure" water, river water is run through a softening system, a reverse-osmosis unit, and a demineralizing process. It is then further treated with chemicals for additional purification. The cooling water must also be "ultrapure," and it is treated in similar fashion. The chemicals used by PacifiCorp to make the water "ultrapure" are one subject of this appeal.

[¶5] When the coal is burned in the boiler, it generates a gas stream containing various air pollutants. To meet state and federal air quality requirements, PacifiCorp sends the gas stream through an electrostatic precip-

---

1. The cooling cycle uses water at the Jim Bridger, Dave Johnston, and Naughton power plants. Because of a scarcity of water, the Wyodak power plant has a different cooling cycle using air instead.

itator to remove fly ash, and through a scrubber to remove sulfur dioxide. In the scrubber, a chemical reagent[2] is used to remove the sulfur dioxide from the gas stream and convert it to solid sodium sulfate. These chemical reagents are the other subject of this appeal.

[¶6] On March 27, 2012, PacifiCorp sought a ruling from the Wyoming Department of Revenue that its purchase of the chemicals used in the boiling and cooling cycles and the chemical reagents used to remove air pollutants from the gas stream should be exempt from sales tax. PacifiCorp asserted that it manufactures electricity, making it eligible for the statutory sales tax exemption for manufacturers. It also claimed that it purchases these chemicals as a wholesaler, making it eligible for the sales tax exemption for wholesale purchasers. The Department ruled against PacifiCorp on May 9, 2012. Pacifi-Corp appealed to the Wyoming State Board of Equalization.

[¶7] On October 1, 2012, PacifiCorp filed a sales tax refund claim with the Department, indicating that the "substantive issue" in this claim was the same as that being reviewed by the Board in PacifiCorp's appeal from the Department's ruling that it was not eligible for the manufacturers' or wholesalers' sales tax exemptions. The Department denied the refund request. PacifiCorp appealed to the Board of Equalization. The Board consolidated the two appeals, and held a contested case hearing on January 28 and 29, 2013.

[¶8] On January 8, 2016, the Board issued its Findings of Fact, Conclusions of Law and Order affirming the Department's determination that PacifiCorp was not eligible for the sales tax exemption for manufacturers or wholesale purchasers, and denying Pacifi-Corp's sales tax refund request. PacifiCorp filed its petition for review in the district court. Soon thereafter it filed an Unopposed Motion for Certification asking the district court to certify its petition for review to this Court pursuant to W.R.A.P. 12.09. The district court granted the motion to certify, and we accepted the certification.

2. Two of PacifiCorp's generating plants use a liquid sodium bicarbonate mix, or "soda liquor,"

## STANDARD OF REVIEW

[¶9] Judicial review of administrative decisions is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2011). We will uphold the Board of Equalization's findings of fact if they are supported by substantial evidence in the record. *Chevron U.S.A., Inc. v. Department of Revenue*, 2007 WY 79, ¶ 9, 158 P.3d 131, 134 (Wyo. 2007). In this case, however, the underlying facts are largely undisputed. The basic question is whether PacifiCorp qualifies for a statutory sales tax exemption, and answering that requires us to interpret the pertinent statutes. Statutory interpretation raises questions of law, which we review *de novo*. *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Smith*, 2013 WY 26, ¶ 9, 296 P.3d 939, 941–42 (Wyo. 2013).

[¶10] "When we interpret statutes, our goal is to give effect to the intent of the legislature, and we 'attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.' " *Fugle v. Sublette County School Dist. No. 9*, 2015 WY 98, ¶ 8, 353 P.3d 732, 734 (Wyo. 2015) (quoting *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009)). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.' " *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)).

We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with

as the chemical reagent, and two of its plants use calcium carbonate.

existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction. *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014) (citing *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶¶ 36–37, 319 P.3d 116, 125–26 (Wyo. 2014)).

## DISCUSSION

[¶11] Wyoming imposes a sales tax on the "sales price of every retail sale of tangible personal property within the state," unless a statutory exemption applies. Wyo. Stat. Ann. § 39-15-103(a)(i)(A). We have long recognized that "[t]here is a presumption created against granting exceptions, and in favor of taxation." *State Board of Equalization v. Tenneco Oil Co.*, 694 P.2d 97, 100 (Wyo. 1985). Accordingly, the burden of establishing an exemption is on the one claiming it. *Commissioners of Cambria Park v. Board of County Comm'rs of Weston County*, 62 Wyo. 446, 174 P.2d 402, 405 (1946). Moreover, "[a]s a general rule, tax exemptions are given a strict interpretation against an assertion of a taxpayer and in favor of the taxing power." *Eastern Laramie County Solid Waste Disposal Dist. v. State Board of Equalization*, 9 P.3d 268, 271 (Wyo. 2000) (citing 3A Sutherland *Statutory Construction* § 66.09, at 42 (5th ed. 1992)).

[¶12] In its first issue, PacifiCorp asserts that it is engaged in the manufacturing of electricity. On that basis, it claims that it is entitled to the manufacturers' sales tax exemption set forth in Wyo. Stat. Ann. § 39-15-105(a)(iii)(A). For purposes of this exemption, the term "manufacturing" is defined as "the operation of producing a new product, article, substance or commodity different from and having a distinctive nature, character or use from the raw or prepared material." Wyo. Stat. Ann. § 39-15-101(a)(xxi).

[¶13] PacifiCorp asserts that the generation of electricity is "manufacturing" because it is an "operation" that produces electricity as "a new product." PacifiCorp further asserts that its new product is "different from" and has a "distinctive nature, character, or use from the raw or prepared material"—in

other words, that the electricity is different and distinct from the coal used to generate it. Finally, PacifiCorp points out that in Wyoming, by statutory definition, electricity is considered "tangible personal property." Wyo. Stat. Ann. § 39-15-101(a)(ix). Accordingly, PacifiCorp claims its process meets the statutory definition of manufacturing because it produces new and distinct tangible personal property for sale or use.

[¶14] The Department presents a differing interpretation. As quoted above, the definition of manufacturing is "the operation of producing a new product, article, substance or commodity different from and having a distinctive nature, character or use from the raw or prepared material." Wyo. Stat. Ann. § 39-15-101(a)(xxi). The Department contends that, under the definition of manufacturing, "the raw or prepared material must be produced into a final form of the same material." Accordingly, the Department asserts that, because the electricity that PacifiCorp produces contains no coal, PacifiCorp cannot be considered a manufacturer.

[¶15] The second premise of the Department's argument is indisputable: we agree that the electricity produced by PacifiCorp contains no coal. We do not agree, however, with the Department's claim that the definition of manufacturing requires that "the raw material [must be incorporated] in some form into the final product." A determination that the raw material must, as a matter of necessity, exist in the new product is at odds with the plain language of the statute, which requires only that the new product be "different from" and have a "distinctive nature, character or use from the raw or prepared material." We cannot read into this definition a requirement that the raw material must exist in the new product.

[¶16] Additionally, the conclusion that PacifiCorp is a manufacturer under the statutory definition is supported by a statement of legislative intent and our precedent. In 1998, the legislature enacted an exemption for "fuel for use as boiler fuel in the production of electricity." 1998 Wyo. Sess. Laws ch.110, § 1, at 770. This exemption is now codified at Wyo. Stat. Ann. § 39-15-105(a)(iii)(G). When

it enacted this exemption, the legislature specifically noted that the "intent of this act is to clarify the long standing interpretation of W.S. 39-6-405(a)(iii)(D) that all sales of fuel for use as boiler fuel are, and have been, exempt from sales and use tax." 1998 Wyo. Sess. Laws ch. 110, § 2, at 770. At that time, Wyo. Stat. Ann. § 39-6-405(a)(iii)(D) provided an exemption for "Sales of power or fuel to a person engaged in the business of manufacturing, processing or agriculture when the same is consumed directly in manufacturing, processing or agriculture." 1995 Wyo. Sess. Laws ch. 77, § 1, at 133.[3] Accordingly, the legislature acknowledged that, prior to enactment of the specific boiler fuel exemption, sales of boiler fuel in the production of electricity were exempt because manufacturing had been interpreted to include the production of electricity. Indeed, that was this Court's conclusion in *State Board of Equalization v. Stanolind Oil & Gas Co.*, 54 Wyo. 521, 532–33, 94 P.2d 147, 150 (1939), as discussed immediately below. By clarifying this "long-standing interpretation," the legislature implicitly endorsed the conclusion that production of electricity qualifies as "manufacturing."[4]

[¶17] In *Stanolind*, we interpreted a manufacturers' sales tax exemption with language very similar to the current exemption.[5] Stanolind sold crude oil to two other companies, "Tulsa" and "Blackman," for use as fuel to generate electricity. *Id.* at 547–48, 94 P.2d at 156. The question was whether Tulsa and Blackman were engaged in the business of manufacturing. We determined that they were, with this brief explanation:

> The Board contends that generating electricity is not "manufacturing" and there-

fore is not exempt under [the manufacturers' sales tax exemption.] Some authorities are cited to that effect. But we think the better reasoning and authorities, as well as the more modern ones, are opposed to this view. *People ex rel. Brush Electric Illuminating Co. v. Wemple*, 129 N.Y. 543, 29 N.E. 808 [ (1892) ]; *In re Charles Town Light & Power Co.*, 183 F. 160 [ (N.D.W.Va. 1910) ]; *Beggs v. Edison, etc. Co.*, 96 Ala. 295, 11 So. 381 [ (1892) ]; *Kentucky Electric Co. v. Buechel*, 146 Ky. 660, 143 S.W. 58 [ (1912) ]; *Burke v. Mead*, 159 Ind. 252, 64 N.E. 880 at 883 [ (1902) ]; *Vencedor Inv. Co. v. Highland Canal & Power Co.*, 125 Minn. 20, 145 N.W. 611 [ (1914) ]; *McMillan v. Noyes*, 75 N.H. 258, 72 A. 759 [ (1909) ]; *Bates Machine Co. v. Trenton & N.B.R. Co.*, 70 N.J.L. 684, 58 A. 935 [ (1904) ]; *Angola Ry. & Power Co. v. Butz*, 52 Ind. App. 420, 98 N.E. 818 [ (1912) ]; 9 R.C.L. 192.

*Stanolind*, 54 Wyo. at 548, 94 P.2d at 156.

[¶18] The Department contends that *Stanolind* can be distinguished because PacifiCorp is a public utility, while Stanolind was not. The Department also asserts that PacifiCorp cannot be considered a manufacturer because under the Northern American Industry Classification System ("NAICS") manual, providers of electricity are classified as utilities, not manufacturers. It points out that Wyo. Stat. Ann. § 39-15-101(a)(xxii) expressly refers to the NAICS manual, and that the Department regularly uses the NAICS manual to classify businesses according to the type of economic activity.

[¶19] For two reasons, we are unconvinced by the Department's effort to distinguish

---

3. Wyo. Stat. Ann. § 39-6-405(a)(iii)(D) has been renumbered and is now codified at Wyo. Stat. Ann. § 39-15-105(a)(iii)(D).

4. According to the Department, if electric generators qualify for the manufacturers' exemption, there was no reason for the legislature to add the boiler fuel exemption. The Department's claim that PacifiCorp's interpretation of the statute renders the boiler fuel exemption superfluous is answered by the legislature's statement of intent. The legislature acknowledged that the manufacturing exemption had previously been interpreted to include boiler fuel used for the production of electricity, but noted that its intent in enacting

the specific boiler fuel exemption was to clarify that interpretation.

5. The statutory language then in effect provided: Each purchase of tangible personal property or product made by a person engaged in the business of manufacturing ... for sale, profit or use, any article, substance or commodity which directly enters into and becomes an ingredient or component part of the tangible personal property or product which he manufactures ... shall be deemed a wholesale sale and shall be exempt from taxation under this Act.
1937 Wyo. Sess. Laws ch. 102, § 2, at 161.

*Stanolind.* First, the question we addressed in *Stanolind* was not whether Stanolind was a manufacturer. The question was whether Tulsa and Blackman engaged in manufacturing when they generated electricity. We concluded that they were manufacturers, without any mention of whether they were also public utilities. *Stanolind* indicates that PacifiCorp engages in manufacturing when it generates electricity regardless of whether it is also a public utility.

[¶20] Second, while the Department is correct that the sales tax statutes expressly refer to the NAICS manual, that reference serves a particular purpose. The sales tax exemption contained in Wyo. Stat. Ann. § 39-15-105(a)(viii)(O)(I) applies only to the sale or lease of machinery to "a manufacturer classified by the department under the NAICS code manufacturing sector 31-33." As PacifiCorp asserts, the legislature made explicit reference to the NAICS manual when it intended to limit a sales tax exemption to an entity with a specific NAICS classification. In contrast, the statutory definition of manufacturing makes no reference to the NAICS manual. PacifiCorp qualifies as a manufacturer under Wyoming's statutory definition. There is no suggestion in the statutory language that PacifiCorp should be disqualified because of its NAICS designation.

[¶21] We conclude that PacifiCorp is a manufacturer under the statutory definition. Its interpretation of the statutory definition is more consistent with the plain language of the statute. The Board of Equalization erred when it concluded that PacifiCorp is not a manufacturer.

[¶22] Having determined that PacifiCorp is a manufacturer, we turn to the second issue, whether the purchase of "certain chemicals necessary to treat water and sulfur dioxide emissions" for the generation of electricity qualify for the manufacturers' sales tax exemption. We previously quoted a portion of the statute establishing the manufacturers' exemption, but a larger portion is needed for the consideration of this second issue. The statute provides an exemption for:

Sales of tangible personal property to a person engaged in the business of manufacturing, processing or compounding when the tangible personal property purchased becomes an ingredient or component of the tangible personal property manufactured, processed or compounded for sale or use.... This subparagraph shall apply to chemicals and catalysts used directly in manufacturing, processing or compounding which are consumed or destroyed during that process.

Wyo. Stat. Ann. § 39-15-105(a)(iii)(A).

[¶23] There is no dispute that the chemicals purchased by PacifiCorp are tangible personal property. We have concluded that PacifiCorp is a manufacturer for purposes of this tax exemption. By statute, electricity is considered tangible personal property for sales tax purposes. Wyo. Stat. Ann. § 39-15-101(a)(ix). Accordingly, there is no dispute that the electricity PacifiCorp generates is tangible personal property. The remaining questions are whether the chemicals become an "ingredient or component" of the electricity, and whether they are "used directly" in the manufacturing of electricity.

[¶24] To support its position, PacifiCorp relies on *State Board of Equalization v. Cheyenne Newspapers*, 611 P.2d 805 (Wyo. 1980). In that case, a newspaper publisher contended that its purchases of certain chemicals and other items were exempt from sales tax. *Id.* at 805. The statute in effect at the time, cited as Section 39-312(e), W.S. 1957, 1975 Cum. Supp., provided a sales tax exemption for: "Tangible personal property or product which directly enters into or becomes an ingredient or component part of any manufactured article or substance or commodity." *Cheyenne Newspapers,* 611 P.2d at 807. We recognized that the words "directly enters" were separated by the word "or" from the words "becomes an ingredient or component." *Id.* at 809. We determined that the statute was not meant to require both directly entering and becoming an ingredient or component, and concluded:

We, therefore, see that the case turned upon the significance of the word "or." As pointed out by this court, the words "(1) enters into" are separated from "(2) becomes an ingredient or component part" by the word "or," thus expressing the in-

tention that the words "enters into" are not used to denote that they enter into the product "in a physical sense."

*Id.* at 808. We did not decide whether the chemicals were an ingredient or component of the newspaper product. However, even though the chemicals did not physically become a part of the newspaper, we noted that the "ink and the newsprint cannot exist as a publication without the direct use of preparatory supplies," such as the chemicals. *Id.* at 810. Because the use of the chemicals was necessary to the production of the newspaper product, we concluded that the chemicals directly entered into the product. We explained:

The word "directly" should not be construed to require a division of the manufacturing process into theoretically distinct stages when in fact it is a continuous, indivisible process. The original copy and news photos pass through a continuous, uninterrupted process until transformed into the final product, a newspaper. As explained in *State v. Capital Coal Company*, [54 Wyo. 176, 181, 88 P.2d 481, 482 (Wyo. 1939)] they do become "in an economic sense a part of a commodity that was resold."

*Id.* Based on *Cheyenne Newspapers*, PacifiCorp contends that the chemicals it uses in the water system and the chemicals it uses in pollution control are necessary to its operations and, in an economic sense, become part of the electricity it generates. PacifiCorp therefore asserts that it qualifies for the sales tax exemption.

■ [¶25] *Cheyenne Newspapers* is distinguishable. After that case was decided in 1980, the Wyoming Legislature amended the tax exemption statute. The new provision exempted "Purchases of tangible personal property by a person engaged in the business of manufacturing, processing or compounding when the tangible personal property purchased becomes an ingredient or component of the tangible personal property manufactured, processed or compounded for sale or use." 1981 Wyo. Sess. Laws ch. 59, § 1, at 76–77. The legislature pointedly removed the "directly enters into or" language that had been the basis of our decision in

*Cheyenne Newspapers.* When the legislature amends an existing statute to omit material words, we presume the legislature intended to change the meaning of the statute. *State v. Holly Sugar Corp.*, 57 Wyo. 272, 116 P.2d 847, 851 (1941). We, therefore, do not find *Cheyenne Newspapers* to be persuasive in PacifiCorp's case.

[¶26] The pertinent language in the current statute is essentially identical to the 1981 enactment. In both, the exemption applies "when the tangible personal property purchased becomes an ingredient or component of the tangible personal property manufactured, processed or compounded for sale or use." The terms "ingredient" and "component" are not defined in the sales tax statutes, so we seek their plain and ordinary meaning from a common dictionary. An ingredient is "something that enters into a compound or is a component part of any combination or mixture." *Webster's Third New International Dictionary* 1162 (3d ed. 2002). Component is defined as "a constituent part: INGREDIENT." *Id.* at 466. The chemicals used by PacifiCorp in the water systems and in the pollution control system are not ingredients of the electricity because the chemicals do not enter or become a component part of the electricity. They are not a component of the electricity because they are not a constituent part or ingredient of the electricity.

[¶27] We note, as PacifiCorp points out, that after the legislature deleted the "directly enters into" language from the statute in 1981, it added a similar phrase, "used directly," back into the statute in 2001. 2001 Wyo. Sess. Laws ch. 119, § 1, at 233. The current version of the statute reads as follows:

Sales of tangible personal property to a person engaged in the business of manufacturing, processing or compounding when the tangible personal property purchased becomes an ingredient or component of the tangible personal property manufactured, processed or compounded for sale or use.... This subparagraph shall apply to chemicals and catalysts used directly in manufacturing, processing or compounding which are consumed or destroyed during that process.

Wyo. Stat. Ann. § 39-15-105(a)(iii)(A). However, the "used directly" language is now employed in a different place; it is now contained only in the second sentence of the statute. The second sentence does not alter or abolish the first sentence's stipulation that only ingredients and components are exempt from taxation. It only clarifies that certain chemicals and catalysts which are ingredients of the tangible personal property manufactured may still qualify for exemption even if they are consumed or destroyed in the manufacturing process.

[¶28] *Cheyenne Newspapers* is also factually distinguishable from the present case. All of the chemicals at issue in *Cheyenne Newspapers* were necessary to create the newspaper. We described the process, and the materials used, as follows:

The facts pertinent to the first issue are these. Appellee, in printing its papers, uses what is known as a cold offset method. News copy in the form of words is typed on a keyboard similar to that of a typewriter and transformed into a perforated tape. A device called a photosetter, a type of camera, converts the tape back into words in columns for newspaper format onto photographic paper which is developed in a photographic chemical solution. The resulting photograph is placed on a grid sheet to form a paste-up page of the newspaper in the making. Pictures go through a different process which changes the photoprint into a dot pattern. This is also a chemical developing process. The halftone resulting from this process is pasted onto the grid sheet where desired along with the word copy.

The paste-up on the grid sheet is then photographed and the negative—like the negative in other type photography to which we are accustomed—is laid on a sensitized aluminum plate and exposed to a bright arc light called a plate burner. When developed in a chemical solution the aluminum plate has an etched image of the material appearing on the grid sheet. The plate is installed on a cylinder in the printing press where the image is mechanically transferred onto an inked blanket and thence rolled onto the newsprint paper which is also chemically treated to prevent smearing of the ink.

The printed pages go on through the press where they are eventually folded and come out a complete newspaper for distribution. The end product, the newspaper, is made up only of ink and paper. The Department assessed the appellee a use tax on the cost of chemicals, the photographic supplies, the aluminum plates and other supplies consumed completely—expended, destroyed or rendered useless—in the process, claiming that the only materials forming a part of the manufactured product, the newspaper, were the ink and paper. *Id.*, 611 P.2d at 806. As indicated by this description, all of the tangible property at issue in *Cheyenne Newspapers* contributed in some way to shaping or forming the new product. Indeed, as noted above, this Court found that the "ink and the newsprint cannot exist as a publication without the direct use of preparatory supplies." *Id.*, 611 P.2d at 810. The same cannot be said about the chemicals that PacifiCorp uses in its water system or pollution control devices.

[¶29] The Board of Equalization did not err in interpreting Wyo. Stat. Ann. § 39-15-105(a)(iii)(A) as limiting the manufacturers' sales tax exemption to ingredients and components of the final product. The chemicals used by PacifiCorp in its water and pollution control systems are not ingredients or components of the electricity produced by PacifiCorp. Accordingly, the Board did not err in determining that the chemicals used by PacifiCorp in its water and pollution control systems are not subject to the manufacturers' sales tax exemption.

[¶30] Turning to PacifiCorp's third issue, the question becomes whether it qualifies for the wholesalers' sales tax exemption. That statutory provision applies, in relevant part, to: "Wholesale sales excluding sales of controlled substances." Wyo. Stat. Ann. § 39-15-105(a)(iii)(F). A "wholesale sale" means "a sale of tangible personal property or services to a vendor for subsequent sale." Wyo. Stat. Ann. § 39-15-101(a)(xvi). PacifiCorp's position on this issue largely mirrors its position on the manufacturers' exemption, in that it relies on *Cheyenne Newspapers*, 611 P.2d at

810 for the proposition that the chemicals it uses in the water cycles and pollution control devices become "in an economic sense a part of a commodity that was resold." As we have previously discussed, however, because of legislative changes to the sales tax statutes, the part of *Cheyenne Newspapers* dealing with the "directly enters into" language is no longer persuasive. Significantly, the wholesalers' exemption also contains no such language.

[¶31] PacifiCorp does not purchase the chemicals at wholesale for the purpose of selling them in a subsequent sale. The chemicals do not become an ingredient or component of the electricity, and they are never resold. PacifiCorp asserts that the wholesalers' sales tax exemption prevents "pyramiding" of taxes, relying on *Morrison-Knudson Co. v. State Board of Equalization*, 58 Wyo. 500, 135 P.2d 927, 932 (1943). That assertion is unavailing, because PacifiCorp is the ultimate consumer of these chemicals. We conclude that the Board of Equalization did not err when it determined that PacifiCorp does not qualify for the wholesalers' exemption in this case.

[¶32] Affirmed.