## STATE BOARD OF EQUALIZATION OF WYOMING v. OIL WELLS SUPPLY CO., ET AL.

(No. 1989; March 2, 1937; 65 Pac. (2d) 1093)

For the plaintiff and appellant, there was a brief by *Ray E. Lee,* Attorney General; *Thomas F. Shea,* Deputy Attorney General, and *William C. Snow,* Assistant Attorney General, all of Cheyenne, and oral argument by *Mr. Lee.*

228

For the defendants and respondent, Oil Well Supply Company, Rocky Mountain Drilling Company, Mutual Oil Syndicate and Continental Oil Company, there was a brief by *Hagens* and *Wehrli* of Casper and oral argument by *Mr. Hagens.*

230

For the respondents, The Texas Company and California Petroleum Corporation, there was a brief by *Y. A. Land* of Denver, Colorado, and *A. D. Walton* of

Cheyenne, Wyoming, and oral argument by *Mr. Land.*

KIMBALL, Justice.

This is a proceeding brought by the State Board of

Equalization under the Declaratory Judgments Act for a declaration of rights that depend on the meaning of certain provisions of the Emergency Sales Tax Act of 1935 (Ch. 74, Sess. Laws, 1935), which imposes a tax on retail sales. Oil Well Supply Company, one of the defendants, has sold supplies and equipment to the six other defendants each of whom is engaged in one or more of the branches of the oil and gas business. The plaintiff contends that the sales were retail sales subject to a tax, while defendants contend that they were wholesale sales, as defined by section 2 (f) of the act. The case was heard on the pleadings and agreed statements of the facts. The trial court's judgment was in accord with defendants' contention, and plaintiff appeals.

Under general definitions contained in paragraphs 2 (c), 2 (d) and 2 (e) a "wholesaler" is one who sells to buyers who take the goods "for the purpose of resale"; a "wholesale sale" does not include a sale "to the user or consumer, not for resale," and a "retail sale" includes all sales "except wholesale sales." Section 2 (f) then provides:

"Each purchase of tangible personal property or service made by a person engaged in the business of producing, furnishing, manufacturing, or compounding for sale, profit or use, any article, substance, service or commodity which is actually used in the production of, or enters into the processing of, or becomes an ingredient or component part of the article, substance, service, or commodity which he manufactures or compounds, produces or furnishes, * * * shall be deemed a wholesale sale and shall be exempt from taxation under this act."

Section 2 (f) is in the nature of an exception to the general definitions in the preceding paragraphs. It describes sales which the legislature evidently thought should be deemed wholesale sales because the property, though used or consumed by the purchaser, was in an

economic sense resold. The classification is based on the business of the purchaser and the use to which the property is put by him. Dropping words of the statute which for our present purpose seem immaterial, a purchaser within the class is one "engaged in the business of producing [or] manufacturing * * * a commodity," and the property is that "which is actually used in the production of, or enters into the processing of, or becomes an ingredient or component part of * * * the commodity."

It is agreed that each of the defendants to whom sales were made is engaged in the business of producing crude oil for sale, profit or use. Some are engaged also in the business of refining crude oil. One is a drilling company engaged solely in the business of drilling producing oil wells for others. We do not decide whether an oil-well driller is engaged in the business of producing oil, as that question is not raised or argued. The case is presented on the theory that there is no need to distinguish between the businesses of those defendants, including the drilling company, who contend they are producing oil. It is also agreed that all the oil produced by defendants, during the time in question "has been refined, processed, compounded and manufactured into gasoline and other petroleum products, and ultimately sold to users and consumers of such gasoline and petroleum products upon the retail market." Under the conceded facts there can be no doubt that each purchasing defendant is engaged in the business of producing crude oil, and is within the class of purchasers described in section 2(f). Those who are refiners are also producing or manufacturing the commodities obtained from the oil by the refining process.

Next, as to the sold property and the use to which it was put by the purchasers. The property of which we shall speak first is not specifically described either in the pleadings or in the agreed statements of the facts,

but is referred to by such general terms as "supplies and equipment" or "tangible personal property." In describing the use to which this property was put, the several agreed statements of facts differ somewhat in language but were evidently intended to have the same meaning. Here, as in the case of the businesses of the purchasers, it was evidently not intended that the court should distinguish one purchase or use from another. In regard to two defendants with whom there were no stipulations as to the facts, it was simply agreed that judgment might be same as the judgment for or against the other defendants. The Attorney General in his brief for plaintiff says it was stipulated that the property purchased by defendants engaged in producing crude oil "was used by the purchaser in the operation of producing oil wells and in the production of crude oil." The agreed statements employ in this connection the statutory words "actually used." It was agreed that supplies and equipment "were actually used" by the purchasers thereof "in and for the operation of producing oil wells owned by them." Again, that purchased articles "were actually used" by the purchasing defendant "in its business of operating crude oil and natural gas wells belonging to it, and of producing crude oil and natural gas therefrom"; and "used and consumed by it in the operation of said wells and in producing crude oil and natural gas therefrom." Further, that the purchased articles "were and are necessary for the successful operation of said wells and necessary to enable the operator and owners of said wells to produce crude oil."

Three items specifically mentioned in the agreed statements were purchased by defendants who are engaged both in producing and in refining crude oil. These are 6 bushings, 36 Mazda lamps and a die. They were not used in the production of crude oil. It is agreed that these articles were used "in refining and

manufacturing plants and used in the refining, processing and manufacturing of crude oil into gasoline and other petroleum products."

It is clear that if the words and phrases of section 2(f) are taken in their plain or ordinary and usual sense (R. S. 1931, § 112-101), the stipulated facts show that the sales in question were wholesale sales. The real question, therefore, is whether the statutory definition should be limited by construction, so that it will not include sales of property which, as agreed, was used in producing or refining crude oil.

Plaintiff contends that an article is not "actually used in the production of" a commodity, within the meaning of section 2(f), unless it enters into the commodity. But this is not what the legislature has said. The construction contended for would in effect rewrite the section, and eliminate words that were evidently inserted with deliberation for the very purpose of making the exemption apply to sales of property that does not in a physical sense enter into the purchaser's product. Section 2(f) of the bill (H. B. 124, Legislative Session, 1935), as introduced in the legislature, limited the exemption to sales of property "which enters into and becomes an ingredient or component part" of the product manufactured or compounded by the purchaser. In the Senate the bill was amended by inserting after the word "which" the words "is used in the production of or," by striking the word "and" and inserting the words "the processing of or" after the word "into." (Senate Journal, 1935, p. 432.) These amendments were retained in the section as rewritten by the conference committee and passed by the legislature. (House Journal, p. 622; Senate Journal, p. 517.) The section cannot be given the meaning plaintiff contends for unless we substitute "and" for "or" before the words "becomes an ingredient or component part."

We cannot assume the right thus to reverse the action of the legislature.

The definition in section 2(f) of sales, deemed wholesale sales because of the use of the property by producers and manufacturers, is broader than any comparable definition we have found in other similar acts. It has often been suggested, however, that sales as described in this section should not be subject to a tax intended to be imposed on retail sales. See Haig and Shoup, "The Sales Tax in Am. States," pp. 583-587; Shoup and Haimoff in 34 Columbia L. R., 816; Jacoby in 2 U. of Chicago L. R., 80. See, also, resolution of the Michigan legislature, quoted in Boyer-Campbell Co. v. Fry, 271 Mich. 282, 285, 260 N. W. 165, 98 A. L. R. 827; section 404(5), ch. 445, p. 771, Session Laws of N. Car. 1933.

The plaintiff fears that the judgment in this case will have the effect of a declaration that every article purchased by a producer or manufacturer and used in his business will be exempt. But we think the judgment, based on the agreed facts, does not go that far. It is not merely agreed that the purchased articles were used generally in the purchasers' businesses, but that they were used in the production or manufacture of mentioned commodities. The agreed statements do not show the particular use to which any purchased article is put in the process of production or manufacture, but state the conclusion or decision of the parties themselves as to the ultimate fact—that the articles were used in producing or refining—without showing that any article is being or will be used for any other purpose.

Finally, it is contended that machinery is not "actually used" in the production of another article, within the meaning of the act, unless it is actually consumed in such production. We are not cited to any authority for holding that "actually used" means "actually con-

sumed." No doubt the reason for the exemption, as applied to sales of machinery, is that the purchased property is wearing out, that is, being consumed, by use in the production. If it should be held that a machine must be totally consumed before the exemption could be claimed, there would be serious difficulties of administration. The life of a machine may extend far beyond the period in which the question of tax liability should be determined.

We hold that under the agreed facts the trial court was right in declaring that the sales in question were wholesale sales not subject to the tax. The judgment will be affirmed.

BLUME, Ch. J., and RINER, J., concur.