## STATE BOARD OF EQUALIZATION v. ARGO OIL CORPORATION

(No. 2113; September 27, 1939; 94 Pac. (2d) 158)

For the plaintiff in error, the cause was submitted on the brief of *Ray E. Lee*, Attorney General; *Thos. F. Shea*, Deputy Attorney General; and *Wm. C. Snow*, Assistant Attorney General, all of Cheyenne.

514

For the defendant in error, the cause was submitted on the brief of *Harold D. Roberts* of Denver, Colorado, and *Hagens & Wehrli* of Casper, Wyoming.

RINER, Chief Justice.

This cause was submitted as a companion case with Case No. 2116, The State Board of Equalization of the State of Wyoming, plaintiff in error, v. Stanolind Oil and Gas Company, a Delaware corporation, defendant in error. It also is a proceeding in error to review a judgment of the district court of Laramie County, in this instance rendered in favor of the Argo Oil Corporation, a Delaware corporation, authorized to transact business as a foreign corporation in the State of Wyoming, hereinafter generally mentioned as the "Argo Company" or as the "defendant in error." The proceeding was instituted by The State Board of Equalization of the State of Wyoming, usually hereinafter

referred to as the "Board," and involves the disposition by said district court of an appeal from certain rulings of the Board under the "Selective Sales Tax Act" of 1937 (Chapter 102, Laws of Wyoming, 1937).

In this litigation there were three stated transactions, all occurring during the month of April, 1937, which the Board decided should be subject to the tax imposed by the Act aforesaid. Objections were made before that body by the Argo Company to the imposition of the tax on said transactions; the Board ruled adversely to such objections; an appeal was taken by the Argo Company to the court aforesaid and the cause being submitted upon pleadings filed and an agreed statement of facts, was tried de novo, as directed by Section 13 of the chapter hereinabove mentioned. The district court adjudged the assessments invalid. Pertinent provisions of the Act, so far as they are needful to be examined here, will not be repeated at this time, as they are detailed in our cause numbered 2116, supra, except as may be done for convenience sake.

The first item or transaction described in the Argo Company's petition filed in the Laramie County district court is:

"Sale of dry residue gas in the Salt Creek Field during the month of April, 1937, by Argo Oil Corporation to Stanolind Oil and Gas Company, and used at field Electric plant and for other fuel purposes."

The agreed facts relative to the matter are substantially these: That the Argo Company produced a quantity of natural gas which it delivered to the Stanolind Oil and Gas Company in the Salt Creek Oil Field in Natrona County, Wyoming; that that company owns and operates one or more compressor plants in said Field; that this gas was delivered to the Stanolind Oil and Gas Company under contract, whereby the latter agreed to take said gas and to "put it through a process of manufacture" from which the "resultant manufac-

tured products were: (1) casing head gasoline, and (2) a vaporous gas commonly known as dry or residue gas"; that by said contract the parties agreed also that the Stanolind Oil and Gas Company, aforesaid, should retain the casing head gasoline as its own property and should devote the residue dry gas to certain stated uses connected with field operation, part of it being used as fuel for operating an electric plant, camps and pipe lines in said Field; that the Stanolind Oil and Gas Company paid the Argo Company a stated sum of money per gallon for all casing head gasoline so resultant and a specified sum of money also, per thousand feet, for the dry or residue gas used by it as fuel, as stated above; that the parties agreed, also, that the Stanolind Oil and Gas Company might use the residue gas, aforesaid, for the operation of its compression plants and inject the rest of it, as required, into its own wells to stimulate production; that the agreed value of the residue gas derived from the natural gas received from the Argo Company, used for fuel for its field electric plant and other field purposes, was a stated sum of money.

The second item or transaction aforesaid is thus described in plaintiff's pleading:

"Sales of fuel gas in the Lance Creek Field for use by occupants of camp."

The stipulated facts as to this item are briefly: That the Argo Company sold and delivered gas in the Lance Creek Oil Field in Wyoming to various persons and corporations for camp use for a stated sum of money; that said gas was purchased and used by them for oil well camp purposes; that such camps were operated by such purchasers for the purpose of drilling for and producing oil for marketing; that said gas was purchased by oil producers in said Field; the price paid by them for such gas entered into and became a part of the cost and sale price of the crude oil produced and

of the gasoline and other petroleum products manufactured therefrom; that said crude oil was sold to refiners and manufacturers of gasoline and other petroleum products who manufactured and refined said oil in this state into gasoline and other petroleum products which were sold on the market in the ordinary course of their business.

A third transaction, decided by the Board to be taxable, is described in plaintiff's petition as:

"Sales of gas in Hamilton Dome Field to Empire State Oil Company and to Columbus Oil Company for use as field fuel." '

The agreed facts relating thereto are in substance: That the Argo Company sold and delivered gas in the Hamilton Dome Oil Field to the companies named in said item for the conduct of their operations in said Field, in consideration of a stated sum of money; that these companies bought and used said gas as fuel for pumping and producing oil from the oil wells they owned and operated in that Field, and that said gas price entered into and became a part of the cost and sale price of the crude oil produced and the gasoline and other petroleum products manufactured therefrom by refiners and manufacturers thereof to whom it was sold.

It was also stipulated relative to the Argo Company's business generally that it never has and does not now operate or control any plant or facility for the "generation, transmission, distribution, sale or furnishing" for the public of electricity for light, heat or power, or for the "manufacture, distribution, sale or furnishing" for the public natural or manufactured gas for light, heat or power, or for the "production, transmission, conveyance, delivery or furnishing" for the public of steam or other substances for heat or power, nor for the "transportation or conveyance to or for the public of oil or gas by pipe line."

.As to Item No. 1, counsel for the Board, referring to Section 2(f) of the Sales Tax Act, aforesaid, where it is provided that "each purchase of tangible personal property or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity which directly enters into and becomes an ingredient or component part of the tangible personal property or product which he manufactures or compounds, * * * shall be exempt from taxation under this Act," as a wholesale sale, present the contention that the Stanolind Oil and Gas Company was not engaged in the business of manufacturing and that "nothing appears in the record in this Argo case showing what the nature of the business is in which the Stanolind is engaged." An all sufficient answer to this claim is, we think, that the agreed facts are otherwise. As we have seen, the Stanolind Oil and Gas Company in its contract with the Argo Company undertook to put the natural gas it obtained from the latter "through a process of manufacture," which would appear to settle the point adversely to the Board's contention. Additionally, it appears from the submitted facts that the Argo Company is not, and never has been, a public utility corporation, and for the reasons stated in the opinion in our Case numbered 2116, supra, the sale is not taxable.

As to items numbered 2 and 3, supra, we consider it sufficient to say, as already remarked concerning item No. 1, that the Argo Company is not a public utility and hence these sales were for that reason exempt from taxation.

The judgment of the district court of Laramie County will accordingly be affirmed.

*Affirmed.*

KIMBALL, J., and BURGESS, D. J., concur.