**WESTERN CARTRIDGE CO. v. SMITH,**
Collector.
No. 369.

Circuit Court of Appeals, Second Circuit.
July 8, 1941.

Helen R. Carloss, Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., and Robert P. Butler, U. S. Atty., and Valentine J. Sacco, Asst. U. S. Atty., both of Hartford, Conn., for appellant.

Watrous, Gumbart & Corbin, of New Haven, Conn. (William B. Gumbart and James W. Cooper, both of New Haven, Conn., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM.

This is an action to recover taxes wrongfully collected. The plaintiff's predecessor was a maker of firearms which it was obliged to test for safety after they were completed; to do so it used cartridges of its own manufacture. Section 610 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 612, imposed an excise tax of 10% upon the sale of cartridges among other articles, and § 622, 26 U.S.C.A. Int.Rev.Acts, page 622, imposed the same tax upon the "use" by a manufacturer, producer or importer of all articles whose sale was taxed by any provision of the title. Section 620, 26 U.S.C.A. Int.Rev.Acts, page 619, provided generally that no tax should be imposed under the title when an article was sold for use "as material in the manufacture or production of, or for use as a component part of, an article to be manufactured or produced by the vendee which will be taxable under this title"; and § 622 contained a parenthetical clause exempting a manufacturer, producer or importer, when he used any article "as material in the manufacture or production of, or as a component part of, another article to be manufactured or produced by him which will be taxable under this title." It will be observed that these were the exact words of § 620. The question is whether they exempted the use of these cartridges; more narrowly, whether the plaintiff's predecessor "used" the cartridges "as material in the manufacture or

production of" the firearms which they tested, since obviously they were not "component parts" of them.

 Textually the words apply well enough; the cartridges were certainly used in the production of" the firearms, because an untested firearm is not practically saleable—it has not yet been finally "produced." It is true that the words, "component parts," were not grammatically exclusive of "materials," for all the "component parts" are necessarily made of "materials" used in the "production of" the article. The reason for the apparent redundancy was that conceivably the law might not tax the sale or use of "materials" but might tax that of "component parts"; in such cases it might be doubtful whether the sale or use of the parts would be exempted. Although we cannot therefore say that whatever is a "material" in this clause cannot be a "component part," we can find an answer for the case at bar in the purpose of the exemption. Section 620 and the parenthesis in § 622 were plainly intended to prevent double taxation; i.e. to apply to situations in which but for them the law would tax the sale or use of an article necessary to the "production of" another article, whose sale or use it independently taxed. The seller or user was to be relieved because the cost of the ancillary articles bought or used by him would presumably enter into that of the finished article and would be taxed when that was sold. Congress could only have been concerned with the economic incidence of the tax, and it would altogether distort the purpose of the exemption to make critical the irrelevant accident that a material whose consumption was necessary to the "production of" the finished goods, chanced to be traceable, however transfigured, as one of their ingredients. Nothing but the most imperative language should induce us to adopt a construction so totally at variance with the scheme as a whole; and there is none.

 It is true that the caption of § 620 is "Sale of Articles for Further Manufacture," but that seems to us of small moment. Indeed it would not be altogether unreasonable to speak of oil, for example, as sold for "further manufacture" when it was sold to oil firearms; but, be that as it may, the caption was for a general class the greater part of which would probably consist of raw material or fabricated parts, and as such it was appropriate enough to the general subject; in any case it should not be seized upon to frustrate the purpose of the section as a whole. Nor are we impressed by the history of the act as it passed through Congress. It suffered many vicissitudes before it finally emerged as we now have it, and in its several stages its provisions were the subject of reports by the two Houses. The defendant has seized upon some of these, made while some of the words which came through stood in other contexts, and argues that the gloss of the report then made should be taken as an authoritative exposition. Nothing could be more illusory, as an examination of his bewildering reasoning will convince anyone who tries to follow it. The meaning of a statute is most safely to be gathered from its language and its purport; it is of course true that interpretations of that language by congressional reports are often extremely serviceable, but an attempt like this to piece out a mosaic of intention from comment upon the successive stages of amendments shuttled between the Houses of Congress before the bill came to rest, is an ignis fatuus which would only lead us into a morass.

Judgment affirmed.