**STATE BOARD OF EQUALIZATION,**
Appellant (Respondent),

v.

**CHEYENNE NEWSPAPERS, INC.,**
Appellee (Petitioner).

No. 5239.

Supreme Court of Wyoming.

May 15, 1980.

John D. Troughton, Atty. Gen., and Kenneth G. Vines, Asst. Atty. Gen. (argued), for appellant (respondent).

Paul J. Hickey, Horiskey, Bagley & Hickey, Cheyenne, for appellee (petitioner).

Before RAPER, C. J., and McCLINTOCK, THOMAS and ROSE, JJ., and JOFFE, D. J.

RAPER, Chief Justice.

Liability for use taxes on certain supplies used in the process of printing newspapers and on a printing press purchased by appellee, Cheyenne Newspapers, Inc., is the subject dealt with in this appeal. The district court reversed the appellant, State Board of Equalization, which had held the supplies and printing press taxable.

We will affirm the district court.

The issues as stated by appellant are:

"1. Was the District Court in error in holding that chemicals, paste-up pages,

aluminum plates, photographic supplies, or other items consumed by Cheyenne Newspapers, Inc., in publishing its newspapers were exempt from the Wyoming Use Tax under W.S. 39–312(e) (1957) which exempts tangible personal property which directly enters into or becomes an ingredient or component part of any manufactured article?

"2. Was the District Court in error in holding that the press purchased by Cheyenne Newspapers, Inc., was not subject to the Wyoming Use Tax on the basis set forth by the Wyoming State Board of Equalization that Cheyenne Newspapers, Inc., was a contractor pursuant to W.S. 39–335.1(b) and (c)(ii) (1957)?"

The appellee is a Wyoming corporation publishing several newspapers, the Wyoming State Tribune, The Wyoming Eagle, the Sunday Wyoming Tribune-Eagle, the SUN/day Magazine (a supplement to the Sunday Wyoming Tribune-Eagle), and the Wyoming Stockman-Farmer. Appellee's offices are maintained in Cheyenne. The Wyoming Department of Revenue and Taxation (Department) audited the appellee for the period January 1, 1973 through December 31, 1975 to determine whether appellee was liable for sales or use taxes. As a result of the audit, the Department issued a Deficiency Assessment, Notice and Demand to appellee claiming use taxes due the State of Wyoming in the sum of $13,539.71, including penalty and interest. On hearing before the State Board of Equalization, the action of the Department was approved. Section 39–43.8, et seq., W.S.1957, 1975 Cum.Supp. Appeal to the district court followed. Rule 12, W.R.A.P.

The facts pertinent to the first issue are these. Appellee, in printing its papers, uses what is known as a cold offset method. News copy in the form of words is typed on a keyboard similar to that of a typewriter and transformed into a perforated tape. A device called a photosetter, a type of camera, converts the tape back into words in columns for newspaper format onto photographic paper which is developed in a photographic chemical solution. The resulting photograph is placed on a grid sheet to form a paste-up page of the newspaper in the making. Pictures go through a different process which changes the photoprint into a dot pattern. This is also a chemical developing process. The halftone resulting from this process is pasted onto the grid sheet where desired along with the word copy.

The paste-up on the grid sheet is then photographed and the negative—like the negative in other type photography to which we are accustomed—is laid on a sensitized aluminum plate and exposed to a bright arc light called a plate burner. When developed in a chemical solution the aluminum plate has an etched image of the material appearing on the grid sheet. The plate is installed on a cylinder in the printing press where the image is mechanically transferred onto an inked blanket and thence rolled onto the newsprint paper which is also chemically treated to prevent smearing of the ink.

The printed pages go on through the press where they are eventually folded and come out a complete newspaper for distribution. The end product, the newspaper, is made up only of ink and paper. The Department assessed the appellee a use tax on the cost of chemicals, the photographic supplies, the aluminum plates and other supplies consumed completely—expended, destroyed or rendered useless—in the process, claiming that the only materials forming a part of the manufactured product, the newspaper, were the ink and paper.

The facts pertinent to the second issue follow. In 1975, appellee purchased a printing press for $51,715.00. It was installed by the vendor-manufacturer in a building which is leased by appellee. It was permanently attached to the floor and the appellant determined it to be a fixture. A use tax was assessed on the press.

EXPENDABLE SUPPLIES

Section 39–312(e), W.S.1957, 1975 Cum. Supp., in effect during the pertinent time period, provided:

"The storage, use or *consumption* in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this act [§§ 39–309 to 39–335]:

\*    \*    \*    \*    \*    \*

"(e) Tangible personal property or product *which directly enters into or becomes an ingredient or component part of any manufactured article* or substance or commodity *including any printed publication,* and the furnished container, label or the shipping case thereof." (Emphasis added.)[1]

The appellant contends that the materials going into the preparation of the aluminum plates and the aluminum plates themselves are all not exempt from taxation and that the only tangible personal property "which directly enters into or becomes an ingredient \* \* \* of \* \* \* [the] printed publication" is the ink and newsprint.

This is not a new question to this court. In 1935 the legislature enacted the "Emergency Sales Tax Act of 1935." Chapter 74, Session Laws of Wyoming, 1935. By its terms, it was self-repealing and expired on March 31, 1937. Section 2(f) of that Act exempted tangible personal property used in manufacturing:

"(f) Each purchase of tangible personal property or service made by a person engaged in the business of producing, furnishing, manufacturing, or compounding for sale, profit or use, any article, substance, service or commodity which is actually used in the production of, or enters into the processing of, or becomes an ingredient or component part of the article, substance, service, or commodity which he manufactures or compounds, produces or furnishes, or the container, label, or the shipping case thereof, shall be deemed a wholesale sale and shall be exempt from taxation under this act."

This court had occasion to construe that section in *State Board of Equalization of Wyoming v. Oil Wells Supply Co.,* 1937, 51 Wyo. 226, 65 P.2d 1093. The State in that case contended that certain supplies and equipment actually used and consumed in producing crude oil, natural gas and refining, processing and manufacturing of crude oil into gasoline and other petroleum products, were not "actually used in the production of" a commodity within § 2(f) unless it enters into the commodity. This court said:

" \* \* \* The construction contended for would in effect rewrite the section, and eliminate words that were evidently inserted with deliberation for the very purpose of making the exemption apply to sales of property *that does not in a physical sense enter into* the purchaser's product. Section 2(f) of the bill (H.B. 124, Legislative Session 1935), as introduced in the Legislature, limited the exemption to sales of property 'which enters into *and* becomes an ingredient or component part' of the product manufactured or compounded by the purchaser. In the Senate the bill was amended by inserting after the word 'which' the words 'is used in the production of or,' by striking the word 'and' and inserting the words 'the processing of or' after the word 'into.' Senate Journal, 1935, p. 432. These amendments were retained in the section as rewritten by the conference committee and passed by the Legislature. House Journal, p. 622; Senate Journal, p. 517. The section cannot be given the meaning plaintiff contends for unless we substitute *'and'* for *'or'* before the words *'becomes an ingredient or component part.'* We cannot assume the right thus to reverse the action of the Legislature." 65 P.2d at 1094–1095. (Emphasis added.)

---

1. Now cited as § 39–6–505, W.S.1977, 1979 Cum.Supp., and since amended to read:

"(a) The following sales are exempt from the excise tax imposed by this article:

\*    \*    \*    \*    \*

"(viii) Sales which directly enter into or become an ingredient or component of any manufactured product including the furnished container, label or shipping case therefor or any printed publication;"

Because this case originated in 1975, it is governed by the earlier version of the statute. We express no views as to whether the amendments would have an effect on the reasoning used to determine this case.

We, therefore, see that the case turned upon the significance of the word "or." As pointed out by this court, the words "[1] enters into" are separated from "[2] becomes an ingredient or component part" by the word "or," thus expressing the intention that the words "enters into" are not used to denote that they enter into the product "in a physical sense." This court went on to say that though the section is broader than most,

"* * * It has often been suggested, however, that sales as described in this section should not be subject to a tax intended to be imposed on retail sales. [Citing authorities.]" 65 P.2d at 1095.

See also as a matter of interest the companion case to State Board of Equalization of Wyoming v. Oil Wells Supply Co., supra; State Board of Equalization of Wyoming v. Stanolind Oil & Gas Co., 1937, 51 Wyo. 237, 65 P.2d 1095, where § 2(f), ch. 74, Session Laws of Wyoming, 1935, was again the subject of construction. In that case the State Board of Equalization took the position that the pipeline service of transporting the oil from the well to the refiner was subject to sales tax because the purchased service did not become a physical part of the commodity manufactured. This court observed that such an argument was even less tenable than in the companion case which involved sales of tangible property. It was again observed that the exemption is evidently allowed on the theory that in an economic sense the exempted service is resold by the purchaser when he sells the commodity which he produces or manufacturers and the court must give effect to the legislative intention.

This court reiterated that concept in State v. Capital Coal Co., 1939, 54 Wyo. 176, 88 P.2d 481, in construing § 2(f) of the 1935 Act. In that case the coal company refused to pay the sales tax to the Union Pacific Railroad Company on transportation of coal for resale. That 1935 section as we have seen and as set out by this court provided that,

"* * * Each purchase of * * * service (transportation) made by a person engaged in the business of * * * furnishing * * * for sale, profit or use any * * * commodity (coal) which * * * enters into the processing of, or becomes an ingredient or component part of the * * * commodity which he * * * furnishes, * * * shall be deemed a wholesale sale and shall be exempt from taxation under this act." 88 P.2d at 483.

The court in the coal company case held that the transportation must be considered a part of the "process" of furnishing and in referring to State Board of Equalization of Wyoming v. Oil Wells Supply Co., supra, and State Board of Equalization of Wyoming v. Stanolind Oil & Gas Co., supra, pointed out that those decisions enlarged the class of sales deemed wholesale sales by making it include sales of both tangible property and services which, though actually used and consumed by the purchaser, "became in an economic sense a part of a commodity that was resold." The court went on to point out that "the transportation in question in this case became a part of the coal resold to the coal company's customers * * *."

In the coal company case, the policy of the law toward exemptions of this sort was also laid out and the court said:

"* * * It may be thought that, to bring the purchases within the letter of the statute, we must give some of its words a rather broad meaning, but we think we are justified in so doing. In Equitable, etc., Society v. Thulemeyer, 49 Wyo. 63, 96, 52 P.2d 1223, 1234, 54 P.2d 896, we stated the general rule that revenue laws will, if ambiguous or doubtful, be construed in favor of the taxpayer. * * *" 88 P.2d at 483.

The legislature at its next session, apparently reacting to the foregoing opinions, upon adoption of the Selective Sales Tax Act of 1937, ch. 102, Session Laws of Wyoming, 1937, a permanent version, amended § 2(f) to read:

"(f) Each purchase of tangible personal property or product made by a person engaged in the business of manufactur-

ing, compounding for sale, profit or use, any article, substance or commodity which directly enters into *and* becomes an ingredient or component part of the tangible personal property or product which he manufactures or compounds, or the furnished container, label, or the shipping case thereof, shall be deemed a wholesale sale and shall be exempt from taxation under this Act."

Note that the word "and" was substituted for "or," thereby neutralizing *State Board of Equalization of Wyoming v. Oil Wells Supply Co.*, supra, as far as the *sales* tax exempted by § 2(f) was concerned. In *Woodson v. State*, 1941, 57 Wyo. 305, 116 P.2d 852, decided subsequent to the amendment, Woodson, doing business as Capital Coal Company, resisted payment of the sales tax to Union Pacific incurred subsequent to the amendment. The court held that a change of wording specifically placing the sales tax on transportation under such circumstances required the coal company to pay the tax. See also, *State v. Holly Sugar Corporation*, 1941, 57 Wyo. 272, 116 P.2d 847, in which exemption for sales tax on transportation was claimed under the 1937 Act and also denied. These cases did not effect a reversal of the concepts expressed in the Oil Wells and first coal company cases.

During the same session of the legislature in 1939, there was enacted the "Use Tax Act of 1937," ch. 118, Session Laws of Wyoming, 1937.[2] Section 4(e) was enacted:

"Section 4. The storage, use or other consumption in this State of the following tangible personal property is hereby specifically exempted from the tax imposed by this Act:

* * * * * *

"(e) Tangible personal property or product which directly enters into *or* becomes an ingredient or component part of any manufactured article or substance or commodity, and the furnished container,

label or the shipping case thereof." (Emphasis added.)

This language is identical in its pertinent part with § 2(f) of the 1935 Act. It is this section and subsection, with the additional phrase "including any printed publication" following "commodity," which now comprise § 39–312(e), W.S.1957, 1975 Cum. Supp., under which the State makes its claim here. The concepts expressed in *State Board of Equalization of Wyoming v. Oil Wells Supply Co.*, supra, do after all remain alive, as do the holdings of the first coal company case, supra, and the *Stanolind Oil Company case*, supra. Their vitality was merely transferred from sales to use taxes. The construction of the language "enters into" when separated from "becomes an ingredient or component part of any manufactured article" by the word "or" does not mean that the purchased property must in a physical sense enter into the purchaser's product. Rather, it means it must enter in an economic sense. We might even say that in an artistic sense the images created by the various processes do actually appear on the published newsprint in the case before us.

▐ Statutes should be given a reasonable, practical construction. *McGuire v. McGuire*, Wyo. 1980, 608 P.2d 1278; *Kelley v. Rhoads*, 1898, 7 Wyo. 237, 51 P. 593, 39 L.R.A. 594, 75 Am.St.Reports 904. It should be observed that the controlling statute separates exempt property into two categories: that "[1] which directly enters into *or* [2] becomes an ingredient or component part of * * * any printed publication * * *." The bracketed "[1]" and "[2]" are only inserted to emphasize that there are two significant phrases in the statute and not intended to be judicial amendments or additions. We must give meaning to every word, clause and sentence of the statute and the statute should be construed so that no part will be inoperative or superfluous. It is often helpful in the process of

---

**2.** A use tax and a sales tax are complementary to each other. The use tax is intended to apply to sales of goods bought outside the state and brought into the state so as to put such goods on an equal footing with goods subject to sales tax. *Morrison-Knudson Co. v. State Board of Equalization*, 1943, 58 Wyo. 500, 135 P.2d 927.

construing a statute to parse or diagram the statute's sentences. This is not an exercise in "rewriting" but only one which results in finding the meaning of the word arrangement of the statute. *State, ex rel. Benham v. Cheever*, 1953, 71 Wyo. 303, 257 P.2d 337. The ink and the newsprint cannot exist as a publication without the direct use of preparatory supplies. The appellant has only recognized category two of the statute as we have numbered the clauses for illustrative purposes and overlooks category one. The appellant also overlooks the words "or" and "consumption," found in the introductory sentence of § 39–312, supra. If we were to do so, we would render meaningless the clause "which directly enters into," as mere surplusage. It cannot be reasonably expected that the legislature intended [1] and [2] to have identical meanings. We consider that language to mean property used up but not a component part of the publication.

Our question may well be, "when does manufacturing begin?" At least one court has gone back even further than we do in this case. While the statute considered [3] in *McClure Newspapers, Inc. v. Vermont Dept. of Taxes*, 1974, 132 Vt. 169, 315 A.2d 452, was somewhat more clear than the one before us, the court there observed that for newspapers the "manufacturing" process begins with gathering of the news. In that case films and flash bulbs used in photographing a news event were tangible property which went into the publication of the news and were as much a part of the process as "applying print to paper." Perforated tapes, aluminum plates and other items such as we have here were also involved in *McClure* and declared exempt.

It has not been satisfactorily explained why the expendables in question should be treated any differently than ink and paper.

They represent costs which must be passed along and absorbed in the expense of production. How and why they are entitled to a different classification has not been shown. The word "directly" should not be construed to require a division of the manufacturing process into theoretically distinct stages when in fact it is a continuous, indivisible process. The original copy and news photos pass through a continuous, uninterrupted process until transformed into the final product, a newspaper. As explained in *State v. Capital Coal Company*, supra, they do become "in an economic sense a part of a commodity that was resold."

Prior to amendment of a similar statute [4] the court in *Courier Citizen Company v. Commissioner of Corporations and Taxation*, 1971, 358 Mass. 563, 266 N.E.2d 284, held that when applied to film, chemicals, emulsions, plates, etc., used in the pre-press preparation, the term "directly" referred to supplies essential to production. As such, they are part of what is factually an integrated process of modern printing and cannot realistically and reasonably be reduced to fragments or segments for taxing purposes so as to disqualify them from the exemption. Under a statute similar to that of Massachusetts described in *Courier*, in *United Aircraft Corp. v. Connelly*, 1958, 145 Conn. 176, 140 A.2d 486, the word "directly" was held to apply to production materials such as x-ray films and testing chemicals which did not become a part of the finally fabricated airplanes, engines and propellors and the exemption was applicable. See also *Niagara Mohawk Power Corporation v. Wanamaker*, 1955, 286 App.Div. 446, 144 N.Y. S.2d 458, to the same effect.

No express language, such as "consumed or destroyed or loses its identity in the manufacture" or "in the process of manu-

---

3. "Tangible personal property which becomes an ingredient or component part of, or is consumed or destroyed or loses its identity in the manufacture of tangible personal property for later sale * * * [is exempt from use tax]." 32 Vt.Stat.Ann. § 9741(14).

4. "[M]aterials * * * which become an ingredient or component part of tangible person-

al property to be sold or which are consumed and used directly * * * in the process of manufacture * * * [are exempt from use tax]." Mass.Ann.Laws, ch. 64H, § 6(r). For case decided after amendment see *Houghton Mifflin Co. v. State Tax Commission*, 1977, 373 Mass. 772, 370 N.E.2d 441, footnote 5.

facture," appears in the Wyoming statute. The statute is, however, assembled from all the necessary words to express the same meaning. "Consumption," according to Webster, means an act or process of consuming; waste; destruction; also, the using up of anything. Use of the term "manufactured article" reasonably · anticipates that there must have been an antecedent manufacturing process for tangible personal property to be transformed into that state. The foreign statutes we cite do not use the term "manufactured article." There is, therefore, built into the statute all the words required to deliver the meaning we have expressed. "Consumption" of "tangible personal property  *  *  * which directly enters into or becomes  *  * component part of  *  *  *  any printed publication" tells the whole story. There is, therefore, an identifiable similarity with statutes of other states to which we have referred. This economy of words may be commendable. There is no need to cloak clear language with imaginary shortcomings.

Both parties overlook the authority of *State Board of Equalization of Wyoming v. Stanolind Oil & Gas Co.*, 1939, 54 Wyo. 521, 94 P.2d 147, for a construction of the word "directly" with which we are concerned here. In the 1937 Act, § 2(f), ch. 102, Session Laws of Wyoming, 1937, the exemption from *sales* tax was granted in different language than that now before us. The first paragraph is set out only as introductory:

"Each purchase of tangible personal property or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity which directly enters into *and* becomes an ingredient or component part of the tangible personal property or product which he manufactures or compounds, or the furnished container, label, or the shipping case thereof, shall be deemed a wholesale sale and shall be exempt from taxation under this Act." (Emphasis added.)

There then followed a provision in the original Act as part of § 2(f) a special paragraph pertaining to power:

"Each purchase of power and/or fuel or any substitute for the same, made by a person engaged in the business of manufacturing or agriculture and *consumed directly in manufacturing* or by a person engaged in the transportation business and consumed directly in generating motive power for actual transportation purposes, shall be deemed a wholesale sale and shall be exempt from taxation under this Act." [5] (Emphasis added.)

In that case, the State Board of Equalization conceded that electric power "consumed directly in manufacturing" used by Stanolind in the production of gasoline, lubricating oils and other petroleum products was exempt but claimed that power for lighting purposes is not consumed "directly" in "manufacturing." This court agreed with the argument of Stanolind:

"*  *  *  'Whether the energy mentioned was used for power to revolve mechanical devices used in manufacturing, or to light the operation and to assist the workmen in carrying out these processes, can make little difference. In either instance the energy was used as directly in manufacturing as the needs could possible afford. When light was needed it was just as impossible to do the work incident to manufacturing crude oil into gasoline at night without light as it was to provide the necessary power for this purpose.' " 94 P.2d at 157.

Certainly the electricity consumed for the light bulbs did not show up as a component of the petroleum products any more than the various supplies consumed in preparatory procedures in the case now before us shows up in newspapers. For our purposes, then the use of the word "directly" in the sales tax section and its application in the use tax section are identical in meaning and application.

---

**5.** The pertinent language remains substantially the same in § 39–6–405(a)(v), W.S.1977, 1979 Cum.Supp.

However there are three companion cases to *State Board of Equalization of Wyoming v. Stanolind Oil & Gas Company*, supra: *State Board of Equalization v. Argo Oil Corporation*, 1939, 54 Wyo. 512, 94 P.2d 158; *State Board of Equalization v. Mountain Producers Corporation*, 1939, 55 Wyo. 3, 94 P.2d 160; and *State Board of Equalization of Wyoming v. Midwest Oil Company*, 1939, 55 Wyo. 1, 94 P.2d 160. These cases also cite and are concerned with that portion of § 2(f) of the 1937 Act which provided that each purchase of tangible personal property made by a person engaged in the business of manufacturing for sale, profit and use any article which "enters into *and* becomes an ingredient or component part of the" product manufactured was exempt. Even though the legislature removed the "or" and substituted "and," this court held that dry residue gas sold by Argo to Stanolind was put through a process of manufacturing from which the resultant manufactured products were casing head gasoline and a vaporous gas known as dry or residue gas. The dry or residue gas was used as fuel to operate an electric plant, camps, pipelines and to stimulate production in its own wells as a part of Stanolind's field operation. In addition, fuel was sold in the Lance Creek Oil to occupants in the camps there, which camps were operated for the purpose of drilling for and producing oil for marketing, the price of the gas entering into and becoming a part of the cost and sale price of the crude oil produced and of the gasoline and other petroleum products manufactured therefrom in the ordinary course of their business. The court held in all cases without discussion that these sales were used in manufacturing and exempt from the sales tax.

■ We hold that the pre-printing supplies at issue here directly entered into the printed publications and were exempt from payment of a use tax.

■ With respect to the use tax assessed on the printing press, § 39–335.1(b) and (c)(ii), W.S.1957, 1975 Cum.Supp., were in effect during the pertinent time period and provided:

"For the purpose of this act [§§ 39–335.1 to 39‑335.7], unless otherwise clearly indicated, the following terms shall be construed to mean:

\*      \*      \*      \*      \*      \*

"(b) 'Contractor' means and includes any general or prime contractors or subcontractors.

"(c) 'General or prime contractor' means and includes (i) any person who contracts, either orally, in writing or by purchase order, with the owner, lessee or other person having authority to enter into a contract involving the premises or property which is the subject matter of the contract, to perform services or furnish materials or both for the construction, alteration, improvement or repair of any real or personal property or project in this state, or (ii) any person who owns or leases real estate in this state for the purpose of developing such real estate other than for his own residency, and in the development thereof, contracts, alters or makes improvements thereon." [6]

The appellant contends that the appellee is a contractor making improvements of real estate under the provisions of § 39–335.2, W.S.1957, 1975 Cum.Supp.:

"Any contractor who furnishes tangible personal property under contract or in the development of real estate owned or leased by him for purposes other than his residency, shall be deemed to be the consumer or user of such tangible personal property within the meaning of the sales and use tax laws of this state. \*  \*  \*"

The district judge opined and held in his decision letter that appellant correctly found as a matter of fact that the appellee leased the building in which the press was located. However, he considered the conclusion inescapable that the lease was for the purpose of developing the real estate in order to provide a business residence for the appellee. The district court continued:

"\*  \*  \* It would seem more reasonable to the Court that when discussion in the

---

**6.** Now § 39–6–601(a)(i) and (a)(ii)(A) and (B), W.S.1977.

statute by way of defining liability for tax talks in terms of development of real estate that the intent of the Legislature in enacting such provision is to encompass those situations where real estate is developed for the purpose of subdivision, sale or leasing to others as a business. Doubts as to the construction of the revenue statute must be resolved in favor of the tax payer and against the taxing power. *The State Board of Equalization vs. Stanolind Oil and Gas company* [54 Wyo. 521], 94 P.2d 147 (Wyo.). Here the purpose of the press is to assist the petitioner in publishing a newspaper, rather than in any purpose of developing real estate. Finally it should be noted that reasonably the press should be considered a fixture that's indicated in a Memoranda submitted by the petitioner at page 14. The Court finds that the board's conclusion that the petitioner was a contractor pursuant to § 39–335.1(b) W.S.1957 as amended is contrary to law and not supported by substantial evidence."

We agree. The appellant's view is unrealistic. Tax statutes should have a practical construction. We hold that the printing press was not subject to payment of a use tax.

The district court is affirmed.

McCLINTOCK, Justice, dissenting in part.

I dissent only from that portion of the opinion which affirms the holding of the district court that taxes were not assessable on expendable supplies used up in the process of getting out the newspaper, but no part of which can be said to have become a chemical or physical part of the printed publication. I agree that the publication of newspapers is generally considered to be manufacture; that statutes should be given a reasonable, practical construction, *McGuire v. McGuire*, Wyo., 608 P.2d 1278 (1980); and that effect should be given, if possible, to every word, clause and sentence of the statute, *State ex rel. Benham v. Cheever*, 71 Wyo. 303, 257 P.2d 337, 341 (1953). Our paramount concern is "to ef-

fectuate the purposes and intent of the legislature. We cannot rewrite a statute that we believe speaks clearly." *State ex rel. Albany County Weed and Pest District v. Board of County Commissioners of County of Albany*, Wyo., 592 P.2d 1154, 1158 (1979). Or, as was well said by the Supreme Court of Oregon in *Union Pac. R. Co. v. Bean*, 167 Ore. 535, 119 P.2d 575, 579 (1941):

"In construing a statute, we are commanded 'to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all'. § 2–216, O.C.L.A.; *Astoria v. Kozer*, 124 Or. 261, 264 P. 445."

The gist of the majority's position is expressed in the following excerpt from the opinion where, after quoting from our earlier decision in *State Board of Equalization of Wyoming v. Oil Wells Supply Co.*, 51 Wyo. 226, 65 P.2d 1093 (1937), it is said:

" * * * As pointed out by this court, the words '[1] enters into' are separated from '[2] becomes an ingredient or component part' by the word 'or,' thus expressing the intention that the words 'enters into' are not used to denote that they enter into the product 'in a physical sense.'" 611 P.2d at 808.

In claimed reliance upon *Oil Wells Supply*, the majority arbitrarily insert three very important words in § 39–312(e), W.S. 1957, 75 Cum.Supp., (Use Tax Act, Ch. 118, S.L. of Wyoming 1937), and change the phrase, "which directly enters into or becomes an ingredient or component part of any manufactured article" to read in effect, "which directly enters into THE PROCESSING OF or becomes an ingredient or component part" of such article. Thus, the whole context of the exemption is altered. There is considerable difference between the clause construed in *Oil Wells Supply* and the clause before us. I believe that consideration of that difference, when reviewed in connection with the pertinent leg-

islative history of the sales and use tax acts, demonstrates that the majority, under the guise of giving effect to what they call the separate parts of the exemption, have arbitrarily inserted into this section language that was deliberately and knowingly omitted therefrom by the legislature.

As appears from the opinion in *Oil Wells Supply*, the amendment of section 2(f) during the passage of the bill through the 1935 legislature was more extensive than merely changing "and" to "or." Indicating deletion amendments by means of "\_\_\_\_" and additions thereto through the use of capitals, we can compare the original bill with the final act, thus:

> "(f) Each purchase of tangible personal property or ~~product~~ SERVICE made by a person engaged in the business of PRODUCING, FURNISHING, manufacturing, or compounding for sale, profit or use, any article, substance, SERVICE or commodity, which is ACTUALLY USED IN THE PRODUCTION OF, OR enters into THE PROCESSING OF, ~~and~~ OR becomes an ingredient or component part . . ." (emphasis added)

of the finished article was a wholesale sale not subject to sales tax. Mr. Justice Kimball made this comment (65 P.2d at 1094):

> "Plaintiff contends that an article is not 'actually used in the production of' a commodity, within the meaning of section 2(f), unless it enters into the commodity. But this is not what the Legislature has said. The construction contended for would in effect rewrite the section, and eliminate words that were evidently inserted with deliberation for the very purpose of making the exemption apply to sales of property that does not in a physical sense enter into the purchaser's product."

He then went into the history of the enactment quoted in the majority opinion, indicating that to sustain the state's position it would be necessary to substitute "and" for "or" just before the phrase "becomes an ingredient or component part." It is not difficult to see that the use of the word "and" at that point could have had the effect of destroying the previous qualifications for exemption because something could be used in "the production of" or could "enter into the production of" a finished article that did not become an actual part. If, however, those phrases were qualified by the further requirement that the purchased personalty had to become a part of the finished article, the effect of the first phrases as independent tests is destroyed. It seems obvious that the legislature did not want that result and advisedly used the word "or" at that place in the statute. But there is nothing in the opinion that justifies the conclusion that the phrase "enters into" the finished article means the same thing as "enters into the production or processing of" that finished article.

The opinion in *Oil Wells Supply* conceded that the statutory definition of wholesale sale was broader than that of most statutes but believed that sound reasons existed for this statutory exemption. However, the opinion is dated March 2, 1937. The legislature was then in session and was considering both sales and use tax legislation. An entirely new act, Ch. 102, S.L. of Wyoming 1937, referred to as the "Selective Sales Tax Act of 1937," was adopted and section 2(f) was restored to the phraseology of the emergency tax act of 1935 as it had been originally introduced in the legislature. This meant that references to "used in the production of" and "the processing of," which had been added in the course of the progress of the 1935 act through the legislature, were deleted. The law has remained in this form from 1937 until the 1977 revision, when the words "directly enters into" were removed so that the sales tax statute now permits the exemption only "when the tangible personal property purchased becomes an ingredient or component of the tangible personal property manufactured . . . ." § 39-6-405(a)(i), W.S.1977, 1979 Cum.Supp.

The Use Tax Act, Ch. 118, § 4(e), S.L. of Wyoming 1937, exempted tangible personal property "which directly enters into or becomes an ingredient or component part of any manufactured article . . . ." This is the form of the present law, § 39-6-505(viii), W.S.1977, 1979 Cum.Supp.

My purpose in presenting this history is to demonstrate that the legislature, after two years experience with the sales tax act, eliminated therefrom provisions based upon the use of personal property in the course of manufacture and enacted the complementary use tax act with no reference to such use in manufacture. The only real test is whether the property claimed to be exempt has entered into or become an ingredient or component part of the finished product. Specific exceptions with reference to the sales tax, part of the 1937 act and now found in subsections (v) and (vi) of § 39–6–405(a), exempt sales of power or fuel to persons engaged in manufacture, agriculture or transportation when the power or fuel is consumed directly in that business. The present use tax provision, § 39–6–505, W.S.1977, 1979 Cum.Supp., provides no exemption for such sales.

I do not believe that the majority's position is strengthened by reference to *State Board of Equalization of Wyoming v. Stanolind Oil & Gas Co.*, 51 Wyo. 237, 65 P.2d 1095 (1937). That case was likewise concerned with language in section 2(f) of the 1935 sales tax act, and it was held that pipeline service of transporting oil to a company engaged in the business of refining was a service "used in the production of" or entering "into the processing of" a commodity and was therefore not taxable. It does not hold that the service entered into the product. The same can be said with reference to *State v. Capital Coal Co.*, 54 Wyo. 176, 88 P.2d 481 (1939). *Woodson v. State*, 57 Wyo. 305, 116 P.2d 852 (1941), and *State v. Holly Sugar Corporation*, 57 Wyo. 272, 116 P.2d 847 (1941), also cited by the majority and which decisions involved the 1937 sales tax act, also seem to me to be consistent with my position.

My real difference with the majority lies in the fact that I do not think that by inserting the numeral "[1]" before the phrase "which directly enters into," and the numeral "[2]" before the phrase "or becomes an ingredient or component part of" the majority can alter the fact that under the plain language of the statute the exemption is granted only as to material which enters into the *manufactured article*, i. e., the printed publication, or as to material which becomes an ingredient or component part of that printed publication. In neither event does the statute direct that material which is merely used in the manufacturing process is exempt. There is no reference to material which "enters into the processing of"; there is no exemption of material which "enters into the manufacture of" the finished article. Nor does the statute use the one word "publication," which possibly might be construed as referring to the physical act of publishing a newspaper. The reference is to the "printed publication," clearly the product and not the process by which that printed publication is effected.

After arbitrarily inserting new language in the statute, the majority then discuss the question whether the operation in this case amounted to manufacture, a point which I concede and which, because of specific reference to "printed publication" in the statute has little bearing upon the problem. However, it is indeed noteworthy that all of the cases cited in this portion of the opinion were concerned with statutes which explicitly granted the exemption to items that were used or *consumed in the manufacturing process*, even though they did not become a part of the product itself.

Thus, in *McClure Newspapers, Inc. v. Vermont Department of Taxes*, 132 Vt. 169, 315 A.2d 452, 453 (1974), the statute, in addition to exempting personal property which became an ingredient or component part of the finished product, also exempted personal property which "is *consumed or destroyed or loses its identity in the manufacture* of tangible personal property for later sale . . . ." (Emphasis added.)

The pertinent statute involved in *Courier Citizen Company v. Commissioner of Corporations and Taxation*, 358 Mass. 563, 266 N.E.2d 284, n.3 (1971), and *Houghton Mifflin Company v. State Tax Commission*, 373 Mass. 772, 370 N.E.2d 441, 444 (1977) contained the ingredient-and-component-part exemption but also exempted property

which is " '*consumed and used directly . . in an industrial plant in the process of the manufacture of* tangible personal property to be sold, including the publishing of a newspaper.' " (Emphasis added.) It is pointed out in the later case that in 1971 the act had been amended to refer to the "actual manufacture," which would of course narrow the exception.

In *Niagara Mohawk Power Corporation v. Wanamaker*, 286 App.Div. 446, 144 N.Y. S.2d 458, 460 (1955), cited in *Courier Citizen Company*, supra, the exemption in pertinent part applied to personal property " 'for incorporation * * * as a material or a part into or for *use or consumption directly and exclusively in the production* of tangible personal property to be produced for sale by manufacturing, processing * *.' " (Emphasis added.) The court set forth the tests it considered necessary to determine "what constitutes 'consumption directly and exclusively in the production' of electricity," 144 N.Y.S.2d at 461, and concluded that coal and ash handling equipment was sufficiently and closely connected with the process of generating electricity, the finished product, that it was directly used in the production of property.

*United Aircraft Corporation v. Connelly*, 145 Conn. 176, 140 A.2d 486, 491 (1958), is cited by the majority as significant because of its construction of the word "directly." This is true, but the statute again was one which exempted materials " 'which became an ingredient or component part of tangible personal property to be sold or *which are consumed and used directly* * * * in an industrial plant *in the process of manufacture of* tangible personal property to be sold.' " (Emphasis added.)

None of these cases is authority for the proposition that an exemption which refers to personal property which enters into a manufactured product applies to materials which are used even to the point of destruction only as a part of the manufacturing process. I therefore must conclude that the majority's equation of the phrase "property used up but not a component part of the publication" with property that enters into the printed publication, is merely assertion.

I would be the first to concede that there are no authorities completely in point to the situation presented to us. As numerous courts have pointed out, sales and use taxes vary considerably from state to state and decisions construing one statute can be applied only with caution in another state. However, for both legal and dictionary definition of the phrase "enters into" I can find no better statement than that of the Colorado Supreme Court in *Bedford v. Colorado Fuel & Iron Corporation*, 102 Colo. 538, 81 P.2d 752, 755–756 (1938), where it is said:

"In the current dictionaries the word 'enter,' and particularly the phrase 'enters into' are defined as follows:

"Webster's International Dictionary, second edition: 'Enter' '(6) To form a constituent part; to become a part or partaker; to empenetrate; share;—with *into* ; as, tin enters into the composition of pewter.'

"New Century Dictionary: 'To enter into.' * * * to form a constituent part or ingredient of (as lead *enters into* the composition of pewter).'

"The New Century Dictionary: 'To enter into; to be an ingredient in; or a constituent part in; as lead enters into the composition of pewter.'

"It will thus be observed that in the ordinarily accepted sense as applied to the question under consideration the word 'enter' used with the preposition 'into' implies that the thing which enters impenetrates and becomes a part and ingredient of the thing produced. The Standard Dictionary defines 'processing' as 'a course or method of operations.' The Century Dictionary expresses the meaning as 'An action, operation or method of treatment applying to something.' Webster defines the term as 'a series of actions, motions or occurrences; progressive act or continuous operation or treatment; a series of operations leading to some result; as a process of manufacture.' Applying these definitions to the words under consideration it would seem certain they mean that to enter into the

processing of an article, substance or commodity, tangible personal property must of necessity become a constituent part of such final product in the series of continuous operations and treatment leading to this result."

The position of the Colorado court was reiterated in the recent case of *Western Electric Company, Incorporated v. Weed*, 185 Colo. 340, 524 P.2d 1369, reh. denied (1974). To me, these decisions and the dictionaries that are cited are clear authority that the terms "enter into" and "ingredient and component part" convey the same meaning and the terms are synonymous.

I submit that there are two classes of statutory exemption: that which exempts personal property that actually becomes a part of the finished product, and that which exempts to a limited extent personal property which does not become a part of the finished product but is nevertheless consumed in the manufacturing process. A case illustrative of the distinction I make is *Briggs and Co. v. District of Columbia*, C.A. D.C., 196 F.2d 241, 243 (1952). Two types of casings were used in the manufacture of frankfurters. One, referred to as natural casings, remained a part of the finished frankfurter. Cellulose casings, on the other hand, were used only for the purpose of shaping and smoking the frankfurters and after such use were removed and discarded. The statute in question defined retail sales to include sales " 'for any purpose other than those in which the purpose of the purchaser is * * * to use or incorporate the property so transferred as a material or part of other tangible personal property to be produced for sale . . . .' " 196 F.2d at 243. The court said:

"Though used in the manufacturing process the casings plainly are not incorporated in the frankfurters. The tax applies, therefore, unless they are used as a material or part of the frankfurters. This is so even though we assume that 'use' must be given a meaning other than 'incorporate.' In contrast with the natural casings it seem to us from the description we have given of the manufacturing process that the cellulose casings are not used as a material or part of the frankfurters. In the language of the Board, notwithstanding their usefulness the casings 'were merely an instrumentality or utensil in the manufacture * * *. They cannot be said to be or ever to have been a part of the sausage.' "

*Courier* and *Houghton Mifflin* point to amendments in the Massachusetts statute which indicate a legislative purpose in Massachusetts to limit the exemption based on use in manufacture. It is my belief that the same restrictive purpose is evidenced in the legislation of this state pertaining to sales and use taxes. Considering that history in specific reference to one of the early decisions of this court involving the sales tax act, I conclude that our legislature has indicated its clear intent that with one exception there should be exemption only in the case of materials which become a physical or chemical part of the finished product.

I do not deny that chemicals, photographic supplies and aluminum plates were used in the process of getting out the newspapers published by Cheyenne Newspapers. Nor do I deny that that use was of economic value in such publication and certainly would be part of the cost. In *State Board of Equalization of Wyoming v. Stanolind Oil & Gas Co.*, supra, 51 Wyo. at 248, 65 P.2d at 1097, we find this pertinent statement with reference to the 1935 version of section 2(f):

"* * * There can be no doubt that these amendments show the intention to exempt purchases of transportation service which the legislature thought might either be 'used in the production' or 'enter into the processing' of a manufactured commodity. This is evidently on the theory that in an economic sense the exempted service is resold by the purchaser when he sells the commodity which he produces or manufacturers. See *State Board v. Oil Wells Supply Co.*, supra."

The majority's emphasis on the fact that the cost of these supplies has economic value in the act of publication of the newspaper cannot alter the fact that the legisla-

ture later clearly saw fit to eliminate any exemption pertaining to production or processing. I could agree that such items should be exempt; the legislature was for a short time of the same mind; it has long since changed from that position except in the case of fuel and power used in manufacture, which remain specifically exempt under the second paragraph of section 2(f), S.L. of Wyoming 1937 (§ 39–287(f) W.S. 1957) which reads as follows:

"Each purchase of power and/or fuel or any substitute for the same, made by a person engaged in the business of manufacturing or agriculture and *consumed directly in manufacturing* or by a person *engaged in the transportation business* and *consumed directly in generating motive power* for actual transportation purposes, shall be deemed a wholesale sale and shall be exempt from taxation under this act." (Emphasis added.)

In *State Board of Equalization of Wyoming v. Stanolind Oil & Gas Co.*, supra, this court refused to distinguish between electricity used in running machines and electricity used in lighting the plant, but the point is that to come within the provisions of this paragraph it was required only that the fuel or power be consumed in the business of manufacture, agriculture or transportation. The legislature was well aware of the differences and chose to terminate one exemption but continued the other.

The same question of economic value was considered by the District of Columbia Appeals Court in *Briggs and Co. v. District of Columbia*, supra. The court recognized that there was merit in creating an exemption in such case but that it was bound to apply the statutory limitations (196 F.2d at 243):

"Much could be said in favor of exempting from the coverage of the statute property used in the sense of being consumed in the manufacturing process where, as here, the *value of the casing* so used is represented in some part at least in the finished product. Since the casing (1) shapes the frankfurter and (2) allows penetration of the mixture by heat and smoke, *some economic value of the fin-*

*ished product is attributable to the casing.* See *Western Cartridge Co. v. Smith*, 2 Cir. 1941, 121 F.2d 593. But the statutory language does not, as in the cited case, exempt an article used 'as material in the manufacture of' another article, but only one used as a 'material or part of' the other or incorporated in it." (Emphasis added.)

In conclusion, I see no significance in the use of the word "or" in the phrase "which directly enters into or becomes an ingredient or component part" of the finished article. In either event the product and not the process is the only significant thing. There is nothing in the statute which indicates any intention upon the part of the legislature that materials, equipment or other items of personal property which are used even to the state of destruction in the manufacturing process and which are undoubtedly of value in achieving a finished product, are to be considered exempt. The only instance which I can find where something which is used in the manufacturing process is to be considered exempt is the use of fuel or power in that process and this exemption exists by reason of the specific direction of the legislature. To construe the words "enters into" as being the equivalent of a specific direction of the legislature exempting materials used in the manufacturing process is to subvert the intention of the legislature, plainly expressed years ago through the early amendment of the sales tax act and the omission of such language from the 1937 use tax act in its original form. This statute has continued in effect for over 40 years without any attempt on the part of the legislature to insert the language which the majority now succeeds in reading into the statute.